BROWN, Chief Judge.
| A six-count bill of information charged that on October 16, 2011, defendant, Alonzo E. Alien, (1) possessed with the intent to distribute cocaine; (2) possessed with the intent to distribute oxycodone; (3) possessed with the intent to distribute hydro-codone; (4) possessed with the intent to distribute diazepam; (5) possessed a firearm with a controlled dangerous sub *516 stance; and (6) possessed a fírearm by a convicted felon.
A jury found defendant guilty of all six counts. Thereafter, the state filed a habitual offender bill of information charging defendant as a sixth-felony habitual offender.[1] The trial court determined defendant to be a second-felony offender. Thus, all of defendant’s convictions, except his conviction for possession of a firearm by a convicted felon, would be enhanced by virtue of defendant’s adjudication as a second-felony offender. The defense waived sentencing delays.
The trial court imposed hard labor sentences without the benefit of parole, probation, or suspension of sentence on all six counts. However, following a hearing on defendant’s motion to reconsider sentence, the trial court, citing La. R.S. 15:529.1(G), amended defendant’s sentences for the first five convictions to allow for the benefit of parole. Defendant’s hard labor sentences were as follows: count one — 40 years; count two — 40 years; count three— 15 years; count four — 15 years; count five — 10 years; count six — 10 years, all to be served without benefits. Additionally, all sentences were to run concurrently.
| ¡¿Defendant has appealed. Appellate counsel assigned as error the trial court’s denial of defendant’s pre-trial motion to suppress. Defendant filed a pro se brief stating that the issue on appeal is “[I]f the initial traffic stop was illegal then all that happened after being stop[ped] was illegal as well.” We affirm.

Discussion

The right of every person to be secure in his person, house, papers and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and by Article I, § 5 of the 1974 Louisiana Constitution. Security from “unreasonable” government intrusion is the ability to exclude the government. Consistent with our precedent, our analysis begins, as it should in every case addressing the reasonableness of a warrant-less search, with the basic rule that “searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009); State v. Thompson, 02-0333 (La.04/09/03), 842 So.2d 330.
Under the automobile exception to the warrant requirement, law enforcement officers may seize and search a vehicle without a warrant if probable cause exists to believe that the vehicle contains contraband or evidence of a crime and there must be exigent circumstances requiring an immediate search. State v. Thompson, supra.
| ¡¡The trial court in this case held an evidentiary hearing to answer this fact-specific question. In State v. Vaughn, 378 So.2d 905, 909 (La.1979), the Louisiana Supreme Court wrote: “We also note that this court has held that, in determining the correctness of a ruling on a pre-trial motion to suppress, we are not limited to the evidence presented at the hearing on that motion but may consider all pertinent evidence adduced at the trial on the merits.” In State v. Sherman, 04-1019 (La.10/29/04), 886 So.2d 1116, the Louisiana Supreme Court again stated: “As a general rule, an appellate court may re *517 view the testimony at trial in determining the correctness of the trial court’s pre-trial ruling on a motion to suppress.... This review may provide supplemental information relevant to the suppression issue. See, e.g., State v. Beals, 410 So.2d 745, 747 (La.1982).”
This court reviews the trial court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while applying a de novo review to its findings of law. State v. Durham, 47,549 (La.App.2d Cir.11/14/12), 107 So.3d 755.

Facts

On April 11, 2012, defendant’s motion to suppress was heard. Officer Billy D. Locke, of the Mansfield Police Department, testified that on October 16, 2011, he received a tip from a confidential informant that defendant would be heading into Mansfield on Louisiana Highway 175 North driving a maroon Chevrolet pickup truck, and that he would be transporting narcotics in the truck. Officer Locke explained that the confidential informant had previously provided Officer Locke with reliable 1 information that had led to a number of prior arrests and convictions. Furthermore, Officer Locke testified that he knew defendant prior to this incident.
Officer Locke investigated the confidential informant’s tip by setting up a stationary patrol. Officer Locke thereafter observed the Chevrolet pickup truck as described by the informant driving down Highway 175 and making a turn onto Highway 509. Once Officer Locke observed that defendant was the driver of the truck, the officer initiated a traffic stop of the vehicle. Officer Locke testified that after this stop he found drugs in the truck. On cross-examination, Officer Locke explained that he had used the confidential informant 10 or 12 times, resulting in several convictions. Officer Locke testified that he did not observe defendant committing a traffic violation; rather, the stop was based on the confidential informant’s tip. Defendant did not testify or present any other evidence. Based on Officer Locke’s testimony, the trial court denied the motion to suppress.
Thereafter, at a preliminary hearing, Officer Locke added that after he pulled defendant over, defendant produced a driver’s license which had expired in 2007. Officer Locke advised defendant that he was under arrest. At this point, Officer Locke patted defendant down “for officer’s safety” and discovered that he was carrying a .22 caliber revolver in his pocket. There were five spent shells in the revolver. Officer Locke testified that Defendant gave Officer Locke permission to search his vehicle, which resulted in the discovery of what appeared to be a large rock of crack |scocaine which was in the center console of the truck.[2] There were also several pill bottles filled with various pills in the truck. The items recovered were sent to the North Louisiana Crime Lab for analysis.
Following voir dire,[3] defendant’s trial commenced with the testimony of Officer Locke, which was substantially similar to his testimony at the motion to suppress *518 and preliminary examination. However, Officer Locke added information that the confidential informant told him that defendant often carried a handgun.
On cross-examination, Officer Locke testified that the truck that defendant was driving was registered to defendant’s employer, Gregory Mims. Officer Locke again added information that when he retrieved the .22 caliber revolver[4] from defendant’s pocket, he also found a bottle containing pills. Officer Locke stated that he did not find any money on defendant or in the truck he was driving. Officer Locke identified the items taken from defendant’s person and the truck.
The state admitted into evidence the lab report from the North Louisiana Crime Lab which verified the composition of the drugs confiscated from defendant’s person and the truck he was driving.
Lieutenant Tony Joe Morris, an officer with the DeSoto Parish Sheriffs Office and expert in fingerprint analysis, matched fingerprints on a Lbill of information, listing defendant as “Alonzo Allen” and showing a conviction in DeSoto Parish for. possession of a Schedule II, controlled dangerous substance, to wit cocaine, on January 8, 2009, to fingerprints taken in open court from defendant. In his trial testimony, defendant admitted that he was convicted of this January 2009 cocaine charge.
At trial, the defense called April Gilbert, defendant’s daughter. Ms. Gilbert testified that she observed Officer Locke’s search of the truck her father was driving on October 16, 2011. Ms. Gilbert stated that she spoke with her father after his arrest, while he was waiting to be transported, and he told her that Officer Locke had taken his cell phone and money. Ms. Gilbert said that she saw money in the truck on the driver’s seat, along with drugs. On cross-examination, Ms. Gilbert admitted to previously being convicted of felony theft and monetary instrument abuse.
The defense called Gregory Mims who testified that defendant was an employee at his company, Mims’ Recycling. Mims stated that the truck driven by defendant on October 16, 2011, belonged to Mims. According to Mims, defendant had not gone to work that day, but had stopped by Mims’ house earlier that day to borrow $300. Mims lent him the money. Later, when Mims went to pick up the truck from the scene of the stop, he asked Officer Locke if there were any more drugs in the truck. Mims explained that he did not want to drive off with drugs in the truck. Defendant then directed the police officers to additional pills in the truck.[5] On cross-examination, Mims denied ownership of the drugs found in his truck.
|7Against advice from his attorney and warnings given by the trial court, defendant took the stand in his own defense.[6] Defendant stated that Officer Locke fabricated the evidence against him because he was angry with defendant. He claimed that he and Officer Locke were caught in a love triangle with a woman named Kristin Marr. Defendant said that Ms. Marr and Officer Locke plotted together to wrongly convict defendant of the charges brought against him. Defendant testified that he had left Ms. Marr a short time before his arrest and that he believed that Ms. Marr was the confidential informant. Defendant stated that the bottles with the pills were *519 in the truck but that they did not belong to him. He did not claim that Ms. Marr put the pills in the truck but said that another employee of Mims had used the truck. He denied that the cocaine was in the truck and also he denied possessing the .22 caliber revolver.
According to defendant, he was working on a semi-truck for Mims on October 16, 2011, and Mims gave him $300 to buy parts to repair the truck. Defendant stated that he was also carrying some of his personal money and that Officer Locke stole it from him. Defendant referred to Officer Locke as a “crooked cop and a thief.”
On cross-examination, in addition to the January 2009 possession of cocaine conviction, defendant admitted to convictions for aggravated battery with a dangerous weapon in 1989 for which he served five years at hard labor; aggravated arson in 1991 for which he served four years; and a 1991 conviction for possession of cocaine.
|sThe state called Officer Locke to rebut defendant’s testimony. Officer Locke denied framing defendant for the charges against him, and denied stealing his money. After closing arguments and jury instructions, the jury found defendant guilty of all six charges.

Analysis

The question before the court is whether the informant’s tip supported by the officer’s investigation gave Officer Locke probable cause to stop and search defendant’s vehicle. The trial court answered this question in the affirmative.
The facts in this case indicate that there was probable cause to stop and search the vehicle. Under the automobile exception to the warrant requirement, law enforcement officers may seize and search a vehicle without a warrant if probable cause exists to believe that the vehicle contains contraband or evidence of a crime. The “ready mobility” of automobiles permits their search based only on probable cause. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (finding that a totality of the circumstances analysis should be used to determine whether an informant’s tip provides probable cause to issue a warrant).
This court has found that probable cause for a traffic stop existed in a case with facts similar to these. State v. Williams, 567 So.2d 755 (La.App. 2d Cir.1990), writ denied, 573 So.2d 1133 (La.1991). In State v. Williams, a confidential reliable informant, who had previously provided information leading to at least 15 drug arrests, telephoned the DeSoto Parish Sheriffs Office to inform them that the defendant had marijuana and crack |9cocaine on his person and that he was getting ready to leave his mother’s house and travel to Texas. The informant also described the color, make and year of the vehicle the defendant was driving. Police responded to the scene, and saw the defendant leave his mother’s house and head west toward Texas. One of the officers pulled the defendant over, and conducted a pat down, which led to the discovery of marijuana and crack cocaine. The defendant filed a motion to suppress, alleging that police did not have probable cause to stop and search him. The trial court denied the motion, and this court affirmed, explaining:
The verification of the details given to Lt. Davidson by his informant, whose past reliability had proven to be extensive, underpins the presence of probable cause in the instant case. The ability of this clandestine individual to predict future behavior demonstrated his personal knowledge of defendant’s affairs. The general public would have had no way of knowing defendant would shortly leave his mother’s house, get in the described *520 car, and drive toward the Texas state line. Because the RCI’s revelations had proved true on these points, the reasonableness of Lt. Davidson’s belief that this informant had access to reliable information concerning Williams’ illegal activities is tenable. Therefore, under the totality of the circumstances, the tip, as corroborated, justified arrest.
State v. Williams, 567 So.2d at 757.
Whether an informant’s tip provides “sufficient indicia of reliability” we examine certain factors under the totality of the circumstances to provide reasonable suspicion or probable cause for a search or a warrant. Illinois v. Gates, supra; State v. Huntley, 97-0965 (La.03/13/98), 708 So.2d 1048. The informant in this case was known to Officer Locke. He/she was not an anonymous tipster and would certainly be held responsible if the tip was incorrect. Moreover, though the precise tip at issue may not have been 11ncommunicated face-to-face, the tip was not a one-time communication. Additionally, the content of the tip-information regarding the location, time, and drugs — was specific information not available to an outside observer. The informant provided information that was only known because he/she was present with the defendant when defendant left with the drugs. We note that defendant claimed that Ms. Marr was with him minutes before he was stopped by Officer Locke and that she was the informant. Indeed, the informant witnessed criminal activity. Officer Locke was able to independently corroborate the informant’s tip when Officer Locke set up at the location provided by the informant and confirmed the truck’s movement. Thus, the informant’s accuracy and reliability were verified by Officer Locke prior to the stop. Accordingly, the totality of the circumstances demonstrates that probable cause existed to believe that defendant was in possession of and the truck he was driving contained drugs.[7]

^¡Conclusion

For the reasons set forth above, defendant’s convictions and sentences are affirmed.

. No. 48,328-KA, the habitual offender case, was consolidated with No. 48,324-KA, the instant case.

. This is the only time Officer Locke testified that consent was given. At trial when asked by defense counsel why he didn’t get a search warrant, Officer Locke said because he had probable cause to search. When defendant testified at trial, he was not asked whether he gave consent for the search.

. During this time, outside the presence of the jury, the trial court denied defendant's request to disclose the identity of the confidential informant.

. The parties consistently referred to this revolver as a pistol.

. Other officers had arrived at the scene by this time.

. Prior to his testimony, the trial court denied defendant’s request to relieve his trial attorney.

. In his pro se brief, defendant raises 11 assignments of error, which have been summarized as follows:
1. Denial of a preliminary examination
2. Denial of the right to face his accuser
3. Denial of the right to privacy
4. Jurisdictional defect concerning the state’s failure to include a dollar amount of the drugs admitted into evidence.
5. Evidence was not field tested
6. Tampering with the evidence
7. Arresting officer stole the defendant’s money
8. Evidence was not sent to the crime lab promptly
9. Video from the police car was subpoenaed and not produced
10. Breach of contract on the defendant’s predicate offenses
11. Ineffective assistance of counsel Nevertheless, we find that defendant does not address these assignments of error. As such, his assignments were abandoned.