CARAWAY, J.
| iAlonzo Allen appeals the trial court’s denial of his motion to return property seized during his 2011 arrest. For -the following reasons, we affirm.

Facts

On August 8, 2012, Alonzo Allen was convicted of four counts of possession with intent to distribute cocaine, oxycodone, hy-drocodone and diazepam, as well as two «counts of possession of a firearm'with a controlled dangerous substance and possession of a firearm by a convicted felon. Allen’s convictions and sentences were affirmed by this court in State v. Allen, 48,324 (La.App.2d Cir.6/26/13), 118 So.3d 514, writ denied, 13-2086 (La.3/21/14), 135 So.3d 616; cert. denied, — U.S.-, 134 S.Ct. 2710, 189 L.Ed.2d 951, 82 USLW 3695 (2014), where the details surrounding Allen’s arrest and conviction can be found.
On- January 21, 2014, Allen filed a motion for release of seized property, specifically requesting the return of $568 and a cellphone[1] allegedly seized in his arrest after á warrantless search of his vehicle. After a contradictory hearing, the trial court orally denied Allen’s motion, finding that “there [was] only Mr. Allen’s testimony and his daughter’s testimony as to the existence of this money,” and that Allen “failed to meet [the] burden of proof by a preponderance of the evidence.” The court determined that there were “possible explanations,” other than what Allen believed, to |2explain the disappearance of the money. . A written judgment followed on August 18, 2014. Allen has .appealed the ruling.

Discussion

In relevant part, La. R.S. 15:41 addresses the disposition of property seized in connection with criminal proceedings as follows:
A. .If there is a specific statute concerning the _ disposition of the seized property, the property shall be. disposed of in accordance with the provisions thereof.
B. If there is no such specific statute, the following governs the disposition of property seized in connection with a criminal proceeding, which is not to be used as evidence or is no longer needed as evidence:
(1) The seized property shall be.returned to the owner, unless a statute declares the property to be.contraband, in which event the court shall order the property destroyed if the court determines that its destruction is in the public interest; otherwise, Paragraph (2) of this Section shall apply.
[[Image here]]
*458 C. Where the release of seized property is sought by a person claiming to be the owner, it shall be released only upon motion contradictorily with the clerk of court. In all other cases the court may either render an ex parte order for the disposition of the property as herein provided on motion of any interested person, or on its own motion, or the court may require a motion contradictorily with the apparent owner or the person in possession of the property at the time of the seizure. .
Additionally, La. C.Cr.P. art. 167 provides that when property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used as evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.
La. R.S. 15:41 outlines the procedures to be followed by the judge in disposing of contraband property seized, and by the owner of |snoncontraband property in obtaining possession of same. Revision Comment (b), La. C.Cr.P. art. 167.
In a civil forfeiture proceeding, the trial court’s findings of fact are subject to the manifest error/clearly wrong standard of appellate review. State v. Birdwell, 47,126 (La.App.2d Cir.5/16/12), 92 So.3d 1107. Under that standard, the fact-finder’s reasonable evaluations of credibility and reasonable inferences of fact made to resolve conflicts in the testimony of the witnesses should not be disturbed. When there are two permissible views of the evidence, the factfinder’s decision to credit one and discredit the other can virtually never be manifestly erroneous or clearly wrong. Id.
At the hearing on the motion, Greg Mims testified that Allen was his former employee and that at the time of his arrest Allen was in a company truck. Mims traveled to the scene of the arrest. Mims had paid Allen approximately $1,000 wages “probably a day before he was arrested.” He identified a business document showing that Allen had been paid on October 14, 2011, in the amount of $829.64.[2] Mims admitted that at Allen’s trial, he testified that he had given the defendant $300 cash “probably five or six hours” before Allen’s arrest for selling things on behalf of the company. Thus, on the date of Allen’s arrest, Mims saw him with money, but did not recall how much. Mims speculated that Allen would have had approximately $1,500. Mims stated that Allen did not work the day of his arrest and did not “recollect” seeing any money at Allen’s arrest location.
REenjamin Simon testified that he was Allen’s coworker. He recalled that on the day of Allen’s arrest, he twice stopped by their workplace and both times saw Allen working. Simon also stopped by Allen’s arrest site when he saw the company truck stopped there. Simon saw no money at the scene, but recalled that the officer “got something out of his truck,” although he did not “know what it was or what.”
April Gilbert, Allen’s daughter, testified that she was nearby at the time of her father’s arrest and eventually walked to the arrest scene. When she was able to talk to her father, “the window was cracked and my dad told me to get his money and his phone.” Gilbert claimed that she “walked to the truck,” and saw drugs “all over the seat” and a stack of money on the seat. According to Gilbert, the officer told her she could not get those items “because he had to hold it for evidence.” Gilbert testified that she was located on the driver’s side front of the truck *459 in between the door when she saw “the money was in a stack, fold[ed] in a stack.”
Larry Krushall testified that on the date of Allen’s arrest, he came to the work site and talked to Allen about helping him with a job. Later Allen assisted Krushall with the work, and he paid Allen money for his help. Krushall testified that he also saw Allen with money prior to his paying him and that Allen “took the money that I paid him and [he] folded it,” putting it with “the stack of money that [he] had already.” Krushall testified that he paid Allen $180. Krushall recalled that it was “no more than an hour” after he gave Allen the money that he heard Allen had been arrested. He recalled that it was around 2:00 p.m., although he later admitted that “it could have | sbeen later,” because he had no way of telling the exact time that Allen left him. He agreed that Allen’s actual arrest time would have been some four or five hours later. He did not go to the arrest scene.
Officer Billy Locke testified that “there was no money seized in this arrest.” Officer Jason Ambrose testified that he “showed up at the end of the call” to see if the officers needed assistance with Allen’s arrest. Ambrose saw no money at the scene.
Allen testified that at the time of his arrest, he was in possession of approximately $568 cash earned by working. He claimed the money was folded “in between my legs on the driver’s seat.” Once he was arrested, Allen did not know what happened to the money. Allen testified that it was Locke who stopped him and ordered him out of his car at the time of his arrest. Allen stated that after he stepped out of the car, he saw the money again “in a Ziploc bag on the hood of — on the hood of the unit that Mr. Locke was driving.” Allen testified that the plastic bag was with the rest of the evidence. He did not get a receipt for the seized property. Allen claimed that the cash came from what he had received from Mims Recycling and Krushall the day of his arrest. He also possessed additional money from his paycheck.
After considering this testimony, the trial court denied Allen’s motion, finding that Allen had failed to meet his burden of proof. We find no error in that determination. Both at the hearing and Allen’s trial, the arresting officer unequivocally stated that no cash was found at the scene of the arrest. In fact, at trial it was only Allen who raised any issue with LLocke’s honesty regarding the cash, accusing him of stealing the money. At the hearing Allen would only say that he did not know where the money went.
Allen’s only proof of money in his vehicle at both the trial and the hearing included his own self-serving testimony and that of his daughter. Other witnesses saw no money at the arrest location and could only say that they had seen him with cash hours before the arrest. Despite the implications of the testimony of the other witnesses, the trial court was presented with a credibility determination concerning the conflicting testimony of Allen and Locke. We also find it significant that the presence of a large amount of cash at the crime scene would have been subject to forfeiture under the Seizure and Controlled Dangerous substances Property Forfeiture Act of 1989, La. R.S. 40:2601, et seq., or used as proof of Allen’s intent to distribute the seized drugs. See State v. Hughes, 587 So.2d 31 (La.App. 2d Cir.1991), unit denied, 590 So.2d 1197 (La.1992). Finally, the large amount of drugs present in Allen’s vehicle gives rise to the competing inference that Allen’s money received prior to his arrest was used in the acquisition of those drugs.
*460 The trial court assessment cannot be disturbed on this appellate record. Considering the broad discretion granted to the trial court in resolving conflicting accounts of facts by witnesses, we find no error in this credibility choice.[3]

17Conclusion

For the foregoing reasons, we affirm the judgment of the trial court denying Allen’s motion and find Allen’s argument to be without merit. Costs of this appeal are assessed to Allen.
AFFIRMED.

. The state agreed that Allen's cellphone should be returned to him.

. The state stipulated that the date of Allen's arrest was October 16, 2011.

. The standard of review for a question of law is de novo, meaning that the court reviews the law and the record without deference to the legal conclusion of the trial court. State v. Eberhardt, 13-2306 (La.7/1/14), 145 So.3d 377. Even under this standard of review, we find no error in the trial court's ruling.