WILLIAMS, J.
liThe defendant, Jeffrey Brown, was charged by amended bill of information with possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1; theft of a firearm, a violation of LSA-R.S. 14:67.15; theft (of a law enforcement officer’s badge), a violation of LSA-R.S. 14:67; and possession of marijuana, a violation of LSA-R.S. 40:966. The defendant filed a pretrial motion to suppress, which was granted by the trial court. We granted the state’s writ of review to determine the correctness of the trial court’s ruling. For the following reasons, we affirm the trial court’s ruling, recall the writ and remand this matter for further proceedings.
FACTS
On April 24, 2010, the Monroe Police Department received an anonymous telephone call from a person who reported that a black male, sitting in a white Lincoln at 118 Martinez Drive, was attempting to sell a handgun and police badge. *736 The police department dispatched Officer Kwasic Heckard to investigate the call; Corporal Henry Foy, Officer Jared Desa-dier and Sergeant Roger Jackson also responded to the call as “backup.” The officers arrived at the scene in four separate marked police vehicles and saw a black male, later identified as the defendant, sitting in the driver’s seat of a white Lincoln. The officers parked their vehicles behind and beside the Lincoln, blocking all possible means of escape. The officers then approached the defendant, with weapons drawn, and ordered him to exit the vehicle. Once the defendant complied, he was handcuffed and questioned; he admitted to having a handgun ahd badge in the vehicle. The officers retrieved the gun, badge and “two suspected marijuana blunts 12that were partially smoked” from the vehicle. The officers conducted a criminal background check and learned that the defendant was a convicted felon.
The defendant was arrested and charged by bill of information with possession of a firearm by a convicted felon and possession of marijuana. On August 29, 2011, the defendant filed a motion to suppress, alleging that he “was exercising his right to be left alone when he was approached, detained, questioned and subsequently arrested[.]” He argued that the stop, subsequent arrest, search and seizure were conducted in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. He also argued that his statements, as well as the gun, badge and marijuana were obtained in violation of his constitutional rights. The motion was not considered on the basis that it was untimely.
On August 31, 2011, the state filed an amended bill of information, charging the defendant with possession of a firearm by a convicted felon, possession of marijuana, theft of a firearm and theft of a sheriffs deputy badge. On October 5, 2011, the defendant filed another motion to suppress re-urging the arguments raised in the first motion; a hearing was held the following day.
Officer Heckard and Cpl. Foy testified at the hearing on the motion to suppress. Officer Heckard testified as follows: on April 24, 2010, the police department received an anonymous tip that a black male was sitting in a white Lincoln vehicle at 118 Martinez Drive, attempting to sell a police badge and pistol; Martinez Drive is considered a high crime area, known for | ¡¡“drugs, shot fired calls, shootings, things of that nature”; the anonymous caller provided no description of the individual, other than he was a black male; when he and the other officers arrived at the location, he observed a black male sitting in the driver’s side of a white Lincoln with the door open; for “officer safety reasons,” he and the other officers approached the car ■with “long guns” (AR-15, shotgun and .40 caliber Glock) pointed in the defendant’s direction; the defendant was given “direct verbal commands to show his hands, to turn around, then to place his hands behind his back”; the defendant “was very compliant” and did not try to resist; the guns were withdrawn when the defendant complied; the defendant was “patted down” for officer safety; the defendant was handcuffed and advised of his Miranda rights; the defendant was questioned about the gun and the badge; the defendant admitted that the items were in the defendant’s vehicle; the officers retrieved the gun and badge from the vehicle; the defendant was placed in a patrol unit and transported to the Ouachita Correctional Center to be booked.
On cross-examination, Officer Heckard testified as follows: the anonymous caller did not provide any specific information *737 regarding either the gun or the badge; he did not know anything about the defendant prior to the night in question; when he arrived at the scene, he did not know whether the gun was stolen or whether the badge was real; he had not received any reports of any threats with the gun, flashing of a gun, or shots fired; when he arrived, he did not have reasonable suspicion to believe that any drug transactions were taking place; the only information he had been given was |4that someone in a white Lincoln was attempting the sell a gun and badge.
Officer Heckard also testified that Monroe police officers wear microphones and recorders; the interaction between the defendant and the officers, including the reading of the Miranda rights, should have been recorded. During his testimony on redirect, Officer Heckard stated that he remembered activating the recorder and it began recording; however, at some point, he noticed that the recorder was “on pause.” He “un-paused it and continued to record from that point.”
On recross examination, Officer Heckard testified that the officers were not attempting to intimidate the defendant when they approached him with their guns drawn. He stated that the “show of force” was necessary for “officer safety.”
The court then questioned Officer Heck-ard. In response to the court’s questions, the officer admitted that the officers arrived at the scene in four separate marked police units and stopped behind the defendant’s vehicle, eliminating any possible means of escape. He also admitted that all four officers exited their vehicles with their weapons (armed with ammunition) “pointed in the direction of the defendant.” Officer Heckard admitted that the defendant did not make “any type of furtive moves or gestures that would indicate ... that he was attempting to hide or shove something into the console area or underneath the seats[.]” He reiterated that the defendant was “extremely cooperative” with the officers.
Cpl. Foy testified at the hearing as follows: on April 24, 2010, he responded to a CrimeStoppers tip that a black male sitting in a white | ^Lincoln at 118 Martinez Drive was attempting to sell a police badge and handgun; the police department could not ignore the tip because that area is considered a high crime area and a gun was involved; when he arrived at the location, he immediately saw a white Lincoln Town Car and a black male was sitting behind the wheel of the car; he approached the vehicle with his weapon (a .40 caliber Glock) drawn; he identified himself to the defendant, ordered him to get out of the vehicle, handcuffed him for officer safety, and advised him of his Miranda rights; he asked the defendant whether he had a gun and a badge in his possession; the defendant responded, “Yes”; the defendant gave the officers permission to search his vehicle; he saw the gun on the floorboard, within the defendant’s wingspan as he approached the vehicle; he retrieved the gun from the floorboard behind the driver’s seat.
On cross-examination, Cpl. Foy testified that the anonymous caller had stated only that “someone” was trying to sell a gun and a badge; the caller did not provide any information regarding any shots fired, brandishing of a gun, or any threats with the gun. Also, the caller did not provide any information about the badge. Cpl. Foy further testified that the area around Martinez Drive is considered a high crime area, where drug transactions are frequently conducted. He admitted, however, that he did not observe the defendant or anyone else conducting any drug transactions when he arrived on the scene. Cpl. Foy testified that the defendant was *738 cooperative and followed the officers’ instructions. He also stated that the defendant was not free to leave when the officers arrived. Cpl. Foy admitted that he did not know whether the defendant was a convicted felon |fiwhen the officers arrived on the scene and placed the defendant under arrest. He also admitted that it is not illegal for a person who is not a convicted felon to sell a handgun. Like Officer Heckard, Cpl. Foy was equipped with a recording device that evening and testified that the recorder should have been activated. However, he stated, “[T]hey tried to find my recording and couldn’t.”
The court then questioned Cpl. Foy regarding the officers’ basis for detaining the defendant. The colloquy was as follows:
[COURT]: [A]t the point that you all arrived and you saw the defendant in the doorway of the vehicle[;] at that point the only corroboration of the informant’s tip was that he was a black male inside a white Lincoln, correct?
[CPL. FOY]: Yes, sir.
[COURT]: You noticed no activity in or around the vehicle that ... you could clearly discern as activity relating to any type of [sale] or attempted [sale] of this badge or gun that was subsequently retrieved from the vehicle did you? As you arrived on the scene?
⅜ * ⅝
[CPL. FOY]: No, as I arrived on the scene, no, sir.
[COURT]: Did y’all see anybody in and around the vehicle attempting to discuss with him or talk with the defendant about anything that would lead you to believe as an experienced officer that they were trying to purchase this gun or this badge from the defendant?
[CPL. FOY]: No, sir, I didn’t see that.
[COURT]: Okay. My concern is what was the basis for you all handcuffing him and basically taking him into custody before you actually retrieved the weapon and the badge from the — the vehicle[.] Prior to that time, tell me what facts did you use to place him under — place him in custody in those handcuffs and take him back to Officer Heckard’s vehicle? What facts did you use to do that?
|7[CPL. FOY]: That we had [a] substantiated description of the vehicle, a suspect[;] we detained him to make sure he was away from the weapon, [and] he couldn’t reach for anything while we continued our investigation.
[COURT]: All right. But prior to that time, you — neither you nor any of your fellow officers observed any type of criminal activity on the part of the defendant at the time that you all arrived at the scene, correct?
[CPL. FOY]: Correct.
[COURT]: All right. And — and he did not commit any offense in your presence did he, other than, I mean, other than being in possession of this after the fact?
[CPL. FOY]: No, sir.
[[Image here]]
[COURT]: Was he placed in Officer Heckard’s vehicle before you actually went into the vehicle and retrieved the gun and the badge or afterwards?
[CPL. FOY]: I believe he was standing at the front, I think Officer Heckard had him at the front of his vehicle at that time. I don’t halfway recall exactly because, you know, I handed him off to Officer Heckard. I know he walked him back to his vehicle.
[COURT]: You would agree that while he was in those handcuffs he was not free to leave at that point was he?
[CPL. FOY]: No, he wasn’t.
[[Image here]]
*739 After the state rested, defense counsel moved to introduce into evidence the audiotape of Officer Heckard’s microphone recording. The defense argued that Officer Heckard had testified that he read the defendant his Miranda rights, and whether the defendant’s statements were free and voluntary was an issue. The recording was admitted into evidence. However, the audiotape did not capture the police officers reciting the | ¡Miranda warnings.[1]
Following the introduction of the recording, the state called Officer Heckard and Officer Jared Desadier as rebuttal witnesses. Officer Heckard testified that he read the defendant his Miranda rights, despite the fact that the recording device did not capture him reading the rights. Officer Desadier testified that he heard both Officer Foy and Officer Heckard reading the defendant his Miranda rights.
On December 7, 2011, the trial court granted the defendant’s motion to suppress the evidence. The court concluded that “the stop, detention, and arrest of the defendant was improper and unconstitutional[J” Specifically, the court found that the anonymous tip, together with the corroboration by the police officers, was insufficient to provide the officers with reasonable suspicion to justify the investigatory detention and arrest of the defendant. The court stated:
[I]t was true that the officers were able to corroborate certain aspects of the anonymous tip, including the color and type of car the defendant was driving and the location of the described vehicle. The tip, however, contained no predictive information from which the officers could reasonably determine that the informant had ‘inside information’ or a ‘special familiarity’ with defendant’s affairs. In particular, the tip failed to predict the specific time period in which defendant would be engaged in illegal activity. It simply stated that the defendant was offering to sell a gun and a badge from a white Lincoln parked at a certain location. Since the tip did not provide sufficiently particular information concerning defendant’s future actions, an important basis for forming reasonable suspicion was absent. The officers, therefore, lacked reasonable grounds to believe that the informant possessed reliable information about defendant’s alleged illegal activities.
ItiThe court also found that the evidence failed to establish that the police officers advised the defendant of his rights pursuant to Miranda. The court noted that there was no testimony in the record to prove which Miranda rights/warnings were given to the defendant, or whether the defendant understood his rights, if the warnings were, in fact, given.
The state filed a writ application, which this court granted by order dated March 1, 2012.
DISCUSSION
The state contends the police officers had reasonable suspicion to approach the defendant, with weapons drawn, because the anonymous caller had informed law enforcement that the defendant was in possession of a weapon. The state concedes that the information provided by the anonymous caller was “skimpy”; however, the state argues that the tip was corroborated when the officers arrived and observed the defendant sitting in a white Lincoln in an area known for drug transactions and violent crimes. According to the state, once the officers corroborated the information provided by the anonymous caller, they had reasonable suspicion to approach the defendant.
*740 The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated. U.S.C.A. Const. Amend. 4. See also, LSA-Const. Art. I, § 5. Any person adversely affected by a search or seizure conducted in violation of this section shall have standing to raise its illegality in the appropriate court. Id.
1inThe right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by both state and federal law. See, LSA-C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Boyle, 34,686 (La.App.2d Cir.9/17/01), 793 So.2d 1281. The standard required for an investigative detention is the “reasonable suspicion of criminal activity” standard articulated in Terry v. Ohio, supra. State v. Boyle, supra; State v. McVan, 32,434 (La.App.2d Cir.3/11/99), 744 So.2d 641.
Because reasonable suspicion is not readily defined, the United States Supreme Court has held that courts reviewing the legality of an investigatory stop must consider the totality of the circumstances of each case to see whether the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), citing Terry v. Ohio, supra; State v. Morgan, 2009-2352 (La.3/15/11), 59 So.3d 403. When applying the totality of the circumstances test, the Supreme Court considers several factors particularly relevant, including the location and time of the stop, as well as the defendant’s actions preceding the stop. Although an individual’s presence in a “high-crime area,” alone, is insufficient to support a reasonable suspicion of criminal activity, the Supreme Court has held that a location’s characteristics are relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), citing Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); State v. Morgan, supra.
An anonymous tip that a person is carrying a gun is not, without more, sufficient to justify a police officer’s stop and frisk of that person. Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). Anonymous tips are generally less reliable than tips from known informants and can only form the basis for reasonable suspicion only if accompanied by specific indicia of reliability, for example the correct forecast of a subject’s “not easily predicted” movements. Id., citing Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).
Additionally, anonymous tips provide the lowest indicia of credibility and do not, in themselves, constitute probable cause for either a search warrant or an arrest warrant to issue. Alabama v. White, supra. This is because agents or police receiving the tip do not know the identity of the informant or his or her relationship to the accused that would indicate the information is credible. State v. Hemphill, 41,526 (La.App.2d Cir.11/17/06), 942 So.2d 1263. An anonymous tip must contain predictive information about the suspect’s future criminal behavior and such behavior must be corroborated in order to establish probable cause. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Alabama v. White, supra. Neither reasonable suspicion nor probable cause exists by corroborating merely descriptive, non-predictive information. Florida v. J.L., supra.
*741 Probable cause for an arrest exists when facts and circumstances known to the officer and of which he has reasonably trustworthy | ^information are sufficient to justify a man of ordinary caution in the belief that the person to be arrested has committed a crime. State v. Wilson, 467 So.2d 503 (La.1985); State v. White, 543 So.2d 124 (La.App. 2d Cir.1989).
In Florida v. J.L,, supra, the police department received an anonymous tip that a young black male, wearing a plaid shirt, was standing at a particular bus stop carrying a gun. Two police officers were dispatched to the location, and upon their arrival, they encountered three black males standing at the bus stop. One of the males, the defendant, was wearing a plaid shirt. The officers did not see a gun and the defendant did not make any threatening movements. The officers had no reason, other than the information provided by the anonymous tip, to suspect the defendant of any illegal activity. One of the officers approached the defendant, ordered him to put his hands up, frisked him and seized a gun from his pocket. The Florida Supreme Court held that the search was invalid under the Fourth Amendment to the United States Constitution. The United States Supreme Court affirmed, stating:
[T]he officers’ suspicion that J.L. was carrying a weapon arose not from any observations of their own[,] but solely from a call made from an unknown location by an unknown caller. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, ‘an anonymous tip alone seldom demonstrates the informant’s basis of knowledge or veracity[.]’
[[Image here]]
The tip in the instant case lacked the moderate indicia of reliability present in [Alabama v.] White [v. Alabama] and essential to the Court’s decision in that case. The anonymous call concerning J.L. provided no predictive information and therefore, left the police without means to test the informant’s knowledge or credibility. That the allegation 11sabout the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct: The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. If White was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line.
529 U.S. at 270-71, 120 S.Ct. 1375.
In the instant case, police department received an anonymous tip that a black male was sitting in a white Lincoln car at 118 Martinez Drive attempting to sell a gun and a badge. The anonymous caller, whose identity was then, and remains, unknown, did not report that any crime was being committed, nor was the caller able to predict any future criminal activity. In response to the tip, the police officers immediately went to the specified location and found a black male sitting in a white Lincoln car. Notwithstanding the fact that none of the officers saw the gun or observed the defendant engaging in any criminal activity, the four officers approached the defendant with their weapons drawn and pointed in his direction. The officers ordered the defendant out of the vehicle, handcuffed him and placed him in a patrol unit. The defendant was clearly *742 not free to leave, and, therefore, he was under arrest.
At the time the officers approached the defendant, they were able to corroborate the anonymous caller’s descriptive identification of “a black male, sitting in a white Lincoln” and nothing more. The anonymous call luprovided no predictive information, and left the police officers without means to test the informant’s knowledge or credibility. All the officers observed was a black male sitting in a car; apart from the limited information provided by the unknown caller, the officers had no reason to suspect the defendant of any illegal conduct. Four police officers, in four separate marked police vehicles, virtually surrounded the defendant’s vehicle, making it impossible for him to leave. None of the officers saw a weapon in the defendant’s possession, and the defendant made no threatening or unusual movements which might indicate that the officers were at risk. There was no information provided by the caller and no evidence at the scene that was indicative of any criminal behavior or even that criminal activity was afoot. As the Supreme Court stated in Florida v. J.L., “That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisk, had a reasonable basis for suspecting [the defendant] of engaging in unlawful conductf.]”
Furthermore, at the time of the incident, the officers had no knowledge that the defendant was a convicted felon; they had no information which might indicate that he did not have a right to possess a gun. Attempting to sell a gun by a private citizen, who has a right to possess a gun, to another person is not illegal. Additionally, at the time of the defendant’s arrest, there was no statute in effect which criminalized the mere possession or sale of a badge.[2] Accordingly, we find that the trial court did not err in concluding that the anonymous tip did not justify the |1sstop and detention of the defendant. This assignment lacks merit.
The state also contends the trial court erred in suppressing the defendant’s statements to the police officers. The state argues that the defendant did not move to suppress his statements to the officers; therefore, the court’s ruling was erroneous.
We note that, contrary to the state’s contention, the defendant did, in fact, move to suppress his statements to the police officers. Specifically, the defendant’s motion to suppress provided:
NOW INTO COURT ... comes JEFFREY BROWN, Defendant herein, for the sole purpose of moving this honorable court to suppress the evidence sought to be used against him in connection with this matter based on the following grounds and for the following reasons, to-wit:
[[Image here]]
II. The stop of your mover and his subsequent arrest was in violation of your mover’s right[s] ... in the following particulars, among others, to be proven at the trial of the motion, to-wit:
* ⅜ *
F) That any statements made by your mover or physical evidence or contraband seized were the result of an unlawful arrest, detention and custody and any physical evidence or contraband seized as a result of such unlawful arrest, detention and custody should be suppressed and excluded.
* * *
*743 III. That in connection with and as a result of the unlawful and unconstitutional invasion of the rights of JEFFREY BROWN, the aforesaid police authority obtained the following, to-wit:
Statements and physical evidence, in-eluding but not limited to a firearm and sheriffs badge and alleged controlled dangerous substances.
11fiIV. That the detention, handcuffing and arrest of your mover was illegal, unlawful and unconstitutional and any evidence obtained as a result thereof!,] including!,] but not limited to[,] statements, test results, physical evidence, alleged contraband and any other items or things should and ought to be suppressed!.]
(Emphasis added).
Additionally, at issue in this case is an illegal arrest prior to the defendant’s statements. Although the defendant’s statements were allegedly preceded by Miranda warnings, the statements were made after the defendant’s vehicle was surrounded by four police vehicles and the defendant was approached by four police officers, all of whom had their “long guns” drawn and pointed in the defendant’s direction. Officer Heckard and Cpl. Foy testified that the defendant was not free to leave when the officers’ guns were pointed at him and when he was handcuffed. Thus, the issue becomes whether the illegality of the arrest tainted the defendant’s statements and consent to search the vehicle.
In State v. Zielman, 384 So.2d 359 (La.1980), the defendants stopped their vehicle at a rural store which had been burglarized in the past; when they discovered that the store was closed, they went down the road to another store. While the defendants were buying gasoline, they were surrounded by police officers who told them that they were being detained and were not free to go. The detention led to the discovery of marijuana on one defendant and a large quantity of marijuana in the vehicle. The defendants filed a motion to suppress evidence and their statements. The Louisiana Supreme Court held that the police had no probable cause for 117what constituted an arrest, and that the illegality of the arrest so tainted the consent to search that the suppression of the physical evidence and the defendant’s statements was required. The court stated that after an illegal detention, a consent to search, even if voluntary, is valid “only when made under circumstances which show no exploitation of the illegality.” Zielman, supra, citing State v. Mitchell, 360 So.2d 189, 191 (La.1978). The court noted the importance of such factors as the temporal proximity between the arrest and the consent, the presence of any intervening circumstances, the purpose and flagrancy of official misconduct, and whether the accused was informed that he need not comply with a request to search. The court further stated:
[T]he consent [to search the vehicle] was inextricably linked to the initial illegal arrest. The consent occurred at the scene of the arrest shortly after the arrest took place. The defendants were not informed of their right to refuse consent. The record discloses no intervening circumstances between the arrest and the consent. The officers’ actions amounted to a clear violation of the right to be left alone and to be free from unwarranted police interference. The officers undertook to restrain the defendants and to question them while under restraint for no better reason than that there allegedly had been, at some unknown time in the past, burglaries in the area. In light of the factors just reviewed, the consent to search must be considered to have been obtained as a *744 result of the exploitation of the original illegal arrest. Since the warrantless search of the defendants’ van is not supported by any grounds apart from that invalid consent, the evidence obtained through that search should have been suppressed by the trial court.
Id. at 863.
In the instant case, we find that the defendant’s consent to search his car was inextricably intertwined with the illegal arrest. The defendant |18consented to the search of his vehicle and admitted that he had a gun and badge in the vehicle. However, the statements and the consent to search were given almost immediately after four police officers blocked his vehicle, approached him with their guns drawn and placed him in handcuffs. The officers testified that the defendant was not free to leave. Like the Zielman court, we find that the illegality of the defendant’s arrest so tainted his consent to search the vehicle that the suppression of the defendant’s statements to the officers, as well as the evidence seized from the vehicle, is required. Given these circumstances, we find that the trial court did not err in suppressing the defendant’s statements made immediately after the illegal arrest. This assignment lacks merit.
CONCLUSION
For the reasons set forth herein, we affirm the trial court’s grant of the defendant’s motion to suppress the statements and physical evidence obtained. We hereby recall the writ application previously granted by this court and remand this matter for further proceedings.
WRIT RECALLED; JUDGMENT AFFIRMED; REMANDED.

. A copy of the recording was not included with this record.

. In 2011, the legislature enacted LSA-R.S. 14:112.4, which made the unauthorized possession or distribution of a peace officer's badge a misdemeanor offense.