GARRETT, J.
_|jThe defendant, Sandy Smith, Jr., was charged with three counts of possession of marijuana with intent to distribute, in violation of La. R.S. 40:966(A)(1); two counts of illegal carrying of weapons while in possession of controlled dangerous substances (CDS), in violation of La. R.S. 14:95(E); and one count of possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1. He subsequently entered a Crosby[1] plea, pleading guilty to the charge of possession of a firearm by a convicted felon and two counts of possession of marijuana with intent to distribute, while reserving the right to appeal the denial of his motions to suppress. The other charges were dismissed, and the state agreed not to file a habitual offender bill. On the firearm charge, the defendant was sentenced to 15 years at hard labor, the first 10 years without benefit of parole, probation, or suspension of sentence, and a $5,000 fine. On each of the drug charges, he was sentenced to 30 years at hard labor, plus a $5,000 fine. All sentences *221 were ordered to be served concurrently. The defendant appealed. We affirm the defendant’s convictions and sentences.
FACTS
As the result of a citizen complaint, the Shreveport police department initiated an investigation of drug sales at a house located at 3222 Marjorie Street. On February 2, 2012, a confidential informer (Cl) was sent to the residence. According to Agent Keith Knox, the Cl was given buy funds and |2fitted with a listening device.[2] The Cl reported that he was sold marijuana by a black male at the residence who called himself “Smitty.” A field test of the substance was positive for marijuana.
Based upon information pertaining to this transaction, the officers were able to secure a search warrant for the Marjorie Street house, which was executed on February 3, 2012. Although no one was present when the officers arrived, the lights and television were on, and a lit marijuana cigarette was found in an ashtray in the kitchen. Also discovered in the kitchen were 2,000 grams of marijuana, digital scales, and packaging materials. (Although pills suspected to be ecstasy were discovered, subsequent lab testing did not find CDS in the sample pills tested.) In a bedroom, the officers found 27 grams of marijuana, a 12-gauge pump shotgun, and a loaded .40-caliber handgun. Lying on top of a bedroom dresser near the marijuana and the handgun were two pawn tickets and legal documents from a federal lawsuit by “Sandy Smith, Jr.” against the Caddo Parish sheriff. One of the pawn tickets was for “Smith, Sandy Jr.” and contained a birth date which matched that given for the defendant in multiple documents in the appellate record. The other pawn ticket was for “Smith, Sandy” and was a renewal of the first ticket with a new maturity date. Both the legal documents and the pawn ticket for “Smith, Sandy Jr.” provided an address for Smith at 3157 Edson Street in Shreveport. Also found were photos which included the defendant.
lsOn February 10, 2012, Agent Knox obtained an arrest warrant for the defendant based upon the evidence recovered at the Marjorie Street house.[3] Reference was made in the supporting affidavit to the defendant’s extensive arrest record, which included violent offenses and narcotics violations.
On February 24, 2012, a search warrant was obtained for the Edson Street house. The supporting affidavit by Agent Knox recited the case history of the controlled buy and the search warrant executed at the Marjorie Street house. On that same day, the defendant was observed leaving the Edson Street house with a large cardboard box, which he placed in his car. After he drove away from the residence, a K-9 officer was directed to conduct a traffic stop of the defendant away from the Edson Street residence; this was done due to safety concerns arising from the presence of the firearms at the Marjorie Street house. However, no traffic violations were observed, and the K-9 officer proceeded to execute the outstanding arrest warrant. The K-9 officer caught up to the defendant’s vehicle as it turned into a gas station. In an effort to avoid a dangerous confrontation, the K-9 officer approached the defendant at the gas pump as though *222 conducting a traffic stop. The K-9 officer then executed the arrest warrant and took the defendant into custody. The defendant was handcuffed and placed in a police vehicle. Minutes later, the K-9 officer’s dog, Mico, was walked around the defendant’s car and alerted on the driver’s door. Mico then entered the car and alerted on the box the defendant had earlier placed |4in the backseat. A search revealed that the cardboard box contained 14½ pounds of packaged marijuana. Cash in the amount of $895 was found on the defendant’s person, and $400 was found in the backseat of the car.
The defendant and his car were initially taken to a nearby fire station being used as a staging area by the narcotics agents. He and the car were later transported to the Edson Street house. During the execution of the search warrant for the house, officers discovered 222 grams of marijuana hidden under the bed in the master bedroom. They also recovered a .380 handgun with ammunition and a Taurus .357 magnum handgun loaded with hollow-point bullets.
The defendant was ultimately charged with three counts of possession of marijuana with intent to distribute, two counts of illegal carrying of weapons while in possession of CDS, and one count of possession of a firearm by a convicted felon.
In May 2012, the defendant, who was represented by retained counsel, filed a motion to suppress. He argued that since his car was searched without his permission or a search warrant, all evidence seized from his car should be suppressed. In a supplemental motion to suppress filed in July 2012, the defendant alleged that the agent who swore out the affidavit for the arrest warrant made intentional false statements in the affidavit which prejudiced the court and led to the issuance of the arrest warrant. Therefore, he asserted that the court should suppress all evidence obtained after his arrest and dismiss the charges against him.
|sOn September 5, 2012, a lengthy hearing was held on the motions to suppress. The state presented the testimony of Agent Knox and Corporal Christopher W. Yarbrough, the K-9 officer. Agent Knox was extensively cross-examined on a number of issues. Additionally, Corporal Yar-brough testified in detail as to his dog’s training, certification, and reliability.
On September 11, 2012, the hearing resumed, and documents discovered at the Marjorie Street house were filed into evidence. On that same date, the trial court denied the motions to suppress after providing detailed oral reasons for ruling. As to the defendant’s contention that Agent Knox intentionally made false statements in his affidavit supporting the arrest warrant, the trial court specifically found the agent to be credible and, after reviewing the defendant’s rap sheet, concluded that there was no actual misrepresentation of the defendant’s criminal history. As the judge who signed the arrest warrant, the trial judge staged that he had not relied on the criminal history information anyway. As to the search of the defendant’s vehicle, the trial court noted that it had reviewed the entire dashcam video of the arrest and the K-9 search of the car. It found that the police had probable cause to search the car once the K-9 officer’s dog alerted on it.
On October 23, 2012, the trial court revisited the motions to suppress after the defendant raised questions about the buy money used in the drug transaction with the CL Agent Knox testified that the buy money was never recovered after the sale, something which he said was “very common.” The trial court maintained its ruling denying the motions to suppress.
*223 IfiOn October 24, 2012, the defendant chose to represent himself with assistance of standby counsel appointed by the court. On December 4, 2012, the day his trial was scheduled to begin, the defendant appeared in court and entered a Crosby plea whereby he reserved the right to appeal the denial of his motions to suppress. He pled guilty to the charge of possession of a firearm by a convicted felon and two counts of possession of marijuana with intent to distribute; all other charges were dismissed. Additionally, the state agreed not to file a habitual offender bill of information against the defendant. The defendant’s wife, who had been charged with two offenses related to the guns and drugs found at the Edson Street house, was offered probation. On the firearm charge, the defendant was sentenced to 15 years at hard labor, the first 10 years without benefit of parole, probation, or suspension of sentence, and a $5,000 fine. On each of the drug charges, he was sentenced to 30 years at hard labor, plus a $5,000 fine. The trial court gave him credit for time served and directed that all sentences be served concurrently.
The defendant appealed.
ISSUES ON APPEAL
Appellate counsel asserted one assignment of error challenging the denial of the motions to suppress. Additionally, the defendant filed eight pro se assignments of error, but enumerated 11 arguments in his pro se brief. These arguments are disorganized and frequently repetitive. We have grouped these assignments and arguments to allow concise discussion of the issues raised. Those which address the issues raised in the motions to |7suppress will be considered alongside the arguments made by appellate counsel.
A plea of guilty normally waives all nonjurisdictional defects in the proceedings prior to the plea. See State v. Crosby, supra; State v. Watson, 37,090 (La.App.2d Cir.5/14/03), 847 So.2d 95. Because the defendant’s Crosby plea reserved only the right to appeal the denial of the motions to suppress, the issues in many of the defendant’s pro se assignments of error were waived by the plea and cannot be considered by this court. These include his complaints which essentially pertain to the weight of the state’s case against him.
In several pro se assignments and arguments, the defendant complains about the trial court’s refusal to disclose the Cl’s identity, a request made in a pro se motion to compel. The Crosby plea reserved only the right to appeal the denial of the motion to suppress. Therefore, this issue was not preserved for appeal. However, even assuming arguendo that the issue was preserved, we find that the defendant failed to show exceptional circumstances which would require divulging the Cl’s identity. State v. Watson, 47,980 (La.App.2d Cir.5/15/13), 135 So.3d 693, writs denied, 2013-1676 (La.2/7/14), 131 So.3d 856, and 2013-1788 (La.2/7/14), 131 So.3d 862.
In other pro se assignments of error and arguments, the defendant attacks the affidavits in support of the search warrants. These issues were not raised in the defendant’s motions to suppress. Therefore, the search warrants are not before us now. Nor are his complaints about the lack of 18“chain of custody” for the buy funds from the Cl transaction, an offense for which he was not even charged. See and compare State v. Cummings, 2007-1304 (La.App. 3d Cir.4/30/08), 983 So.2d 246, writ denied, 2008-1187 (La.2/20/09), 1 So.3d 489. However, even assuming arguendo that these claims were before us, we find that they are without merit. The Cl’s purchase of drugs at the Marjorie Street house provided probable cause for issuing a search warrant of that house. The documents *224 with the defendant’s name and Edson Street address discovered during the execution of the Marjorie Street search warrant provided ample probable cause for the issuance of the search warrant for the Edson Street house. Furthermore, as noted above, the chain of custody for the buy money was never at issue because the defendant was not charged with any offense arising from that transaction and the buy money was never recovered.
MOTIONS TO SUPPRESS
The defendant’s motions to suppress presented two narrow issues to the trial court: (1) whether the agent’s affidavit in support of the arrest warrant contained intentional false statements which prejudiced the court and led to the issuance of the arrest warrant, and (2) whether the search of his car was valid. Only these issues were preserved for appeal by the Crosby plea.
This court reviews the district court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, as well as credibility and weight determinations, while applying a de novo review to ^findings of law. State v. Freeman, 44,980 (La.App.2d Cir.1/27/10), 33 So.3d 222, writ denied, 2010-0535 (La.10/1/10), 45 So.3d 1094.

Arrest Warrant Affidavit

In relevant part, La. C. Cr. P. art. 202 states:
A. A warrant of arrest may be issued by any magistrate pursuant to this Paragraph or as provided in Paragraph D of this Article and, except where a summons is issued under Article 209, shall be issued when all of the following occur:
(1) The person making the complaint executes an affidavit specifying, to his best knowledge and belief, the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any....
(2) The magistrate has probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it.
Probable cause for an arrest exists when the facts and circumstances known to the police and of which the police have reasonably trustworthy information are sufficient to justify a person of average caution in the belief that the person to be arrested has committed a crime. State v. Williams, 448 So.2d 659 (La.1984); State v. Brown, 47,247 (La.App.2d Cir.9/26/12), 105 So.3d 734. Minor inaccuracies in assertions in the affidavit may not affect the validity of the warrant. However, if intentional misrepresentations designed to deceive the issuing magistrate are made by the affiant seeking to obtain the warrant, the warrant must be quashed. Alternatively, if unintentional misstatements are included, these misstatements must be excised and the remainder used to determine if probable cause for the issuance of a warrant 'is set forth. Similarly, when the affiant omits material facts without intent to deceive, the reviewing court | inmust add the omitted facts to those originally included and retest the sufficiency of the showing of probable cause. State v. Williams, supra; State v. Peterson, 2003-1806 (La.App. 1st Cir.12/31/03), 868 So.2d 786, writ denied, 2004-0317 (La.9/3/04), 882 So.2d 606. The term “intentional” means a deliberate act made for the purpose of deceiving the magistrate. State v. Rey, 351 So.2d 489, 492 n. 1 (La.1977); State v. Peterson, supra.
At the hearing on the defendant’s motions to suppress, Agent Knox testified that the investigation which led to the defendant’s arrest was initiated as the re- *225 suit of a citizen complaint that a “Sandy Smith” who resided at the Marjorie Street house was allegedly selling narcotics from that residence. Agent Knox sent a Cl to make a controlled buy at the residence; the Cl told him that the person who sold drugs to him identified himself as Smitty. During the execution of the search warrant at the Marjorie Street house, documents with the name Sandy Smith were found. Agent Knox testified that he reviewed the defendant’s rap sheet. It showed a variety of arrests since 1998, which included the following: 1998, possession of drug paraphernalia; 1994, armed robbery; 1995, simple battery; 1997, possession of marijuana and illegal use of firearm; 1999, federal fugitive warrant;[4] 2007, attempted second degree murder;[5] 2009, I,,federal fugitive warrant. However, the rap sheet does not include dispositions on many of these arrests.
Based on all this information, Agent Knox executed an affidavit in support of an arrest warrant for the defendant on multiple drug and weapons charges. It stated, in relevant part:
The Affiant is a trained and experienced investigator with the Shreveport Police Department. The Affiant is currently assigned to the Caddo/Shreveport Narcotics Task Force-Mid Level Investigative Unit (M.L.I.U.) The Affiant has been employed with the Shreveport Police Department for the past 13 years. Through personal investigation along with the investigations by other members of M.L.I.U. the following information was learned:
On February 3rd, 2012 a narcotics search warrant was executed at 3222 Marjorie in Shreveport, -Louisiana and within Caddo Parish following a short term narcotics investigation. The Cad-do/Shreveport Narcotics Unit received a complaint that a Sandy Smith, Jr. was selling marijuana from the residence at 3222 Marjorie Street. A controlled purchase of marijuana was made and Sandy Smith Jr. DOB of 09/12/1975 was identified as the occupant of the residence and a suspect in the distribution of CDS. It was also learned that Sandy Smith Jr. had a violent criminal history to include 2nd degree murder, armed robbery and several narcotics violations (one to include illegal carrying of a firearm).
Upon the execution of the warrant the two bedroom residence was unoccupied, however the lights and T.V. were on and a marijuana cigarette was burning in an ashtray on the kitchen table. Agents seized approximately 2,000 grams of suspect marijuana, 118.5 suspected ecstasy (MDMA) tablets, a .40 caliber hand gun and a 12 gauge pump shotgun. The majority of the suspected marijuana was in plain view on the kitchen table along with several digital scales and packaging material. The ecstasy (MDMA) was also located on the kitchen table and was packaged for distribution. The 12 gauge shotgun was located propped up just inside the bedroom door and the .40 caliber semi-auto handgun (which was loaded) was lying on the dresser in the bedroom next to approximately 27 grams of marijuana and documents to include legal documentation addressed to Sandy Smith Jr. The resi *226 dence was a two bedroom structure with a kitchen, living room and a single bathroom. Only one of the bedrooms appeared to be in use as the other was cluttered as if a storage area and had no clothing. The suspected marijuana field 112tested positive for the presence of marijuana and was sent to the Northwest Regional Crime Laboratory along with the suspected MDMA tablets for further chemical testing. The .40 Caliber handgun was submitted to Shreveport Police Crime Scene Division to be printed for latent prints. [Emphasis added.]
On cross-examination at the motion to suppress, Agent Knox admitted that he did not personally see the defendant at the Marjorie Street house on February 2 or 3, that there was no audio recording of the Cl transaction, and that he did not show the Cl a photo lineup after that transaction. He also stated that even though the Cl told him that the person he dealt with called himself Smitty, he did not include that in the warrant applications. Agent Knox testified that he stated in the arrest warrant that the defendant was identified as the seller because of the documents recovered from the Marjorie Street house. The agent further indicated that, even if the defendant was only arrested — but not convicted — for second degree murder and armed robbery, he believed his statement about the defendant having a violent criminal history was accurate.
In denying the defendant’s motion to suppress, the trial court specifically found Agent Knox to be a credible witness. After reviewing the defendant’s rap sheet, the trial court found no actual misrepresentation of the defendant’s criminal history in the affidavit for the arrest warrant and, if there was any misrepresentation, it was not intentional.
Our review of the arrest warrant affidavit reveals that it provided the issuing judge with probable cause that the defendant was the person selling marijuana from the Marjorie Street residence. First, the affidavit informed the judge that a citizen had notified the police that a “Sandy Smith” was | ^dealing drugs from the Marjorie Street home. Although that information was not included in the affidavit for the search warrant for that house, the information about the perpetrator’s identity was not essential to secure a search warrant for Marjorie Street. However, it was clearly relevant to the arrest warrant for the defendant. Second, the results of the search of the Marjorie Street home provided another connection between the defendant and that home and the contraband found therein. Specifically, legal documents and pawn tickets bearing the defendant’s name were found on a bedroom dresser next to a quantity of marijuana and a loaded gun. The burning marijuana cigarette and the quantities of marijuana discovered during the search strongly suggested that the home’s occupant had very recently vacated the premises without time to gather his effects. Finally, the affidavit in support of the arrest warrant further stated that only one bedroom appeared to be occupied; the other bedroom was being used as a storage area and had no clothing. The papers identifying the defendant were found in the occupied bedroom. Since the other items found in the house included weapons and a substantial quantity of marijuana along with packaging materials, the reasonable inference to be drawn is that the defendant was the person using the home as a “trap house” for the distribution of drugs.
The least accurate information in the affidavit was that pertaining to the defendant’s criminal history. Of particular note, the affidavit stated that this criminal history included a charge of second degree *227 murder. The rap sheet introduced at the hearing is unclear as to whether the defendant was |14arrested for second degree murder or attempted second degree murder. However, given the combination of the tip and the discovery of the defendant’s personal documents in the house, the criminal history information is of little to no relevance. Retesting the affidavit after the excision of the defendant’s criminal history still leads to a finding of probable cause.
Based on the foregoing, we find that the warrant issued for the defendant’s arrest was valid and that the police were authorized to stop and arrest the defendant pursuant to it.

Vehicle Search

Next, we consider whether the warrant-less search of the defendant’s car was valid.
When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. La. C. Cr. P. art. 703(D); State v. Williams, 46,674 (La.App.2d Cir.12/14/11), 81 So.3d 220.
The right of every person to be secure in his person, house, papers and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and by Article I, § 5 of the 1974 Louisiana Constitution. Security from “unreasonable” government intrusion is the ability to exclude the government. Our analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that “searches conducted outside the judicial process, 115without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009); State v. Allen, 48,324 (La.App.2d Cir.6/26/13), 118 So.3d 514, writ denied, 2013-2086 (La.3/21/14), 135 So.3d 616, cert. denied, — U.S. -, 134 S.Ct. 2710, 189 L.Ed.2d 951 (2014).
Police may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. Arizona v. Gant, supra.
A canine sniff test by a well-trained narcotics detection dog does not constitute a search within the meaning of the Fourth Amendment. United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); State v. Freeman, supra. Once the dog alerts on the door panels, the officers have probable cause to search a vehicle without first obtaining a warrant. State v. Freeman, supra.[6] The *228 Fourth Amendment allows police to hfiSearch a vehicle absent a warrant if a car is readily mobile and probable cause exists to believe it contains contraband. State v. Lee, 46,742 (La.App.2d Cir.12/14/11), 79 So.3d 1278; State v. Lopez, 2000-0562 (La.10/30/00), 772 So.2d 90. A warrantless search of a vehicle is not unreasonable if there is probable cause to justify the search, without proving any additional exigency, when the vehicle is readily mobile because there is an inherent risk of losing evidence. State v. Freeman, supra; State v. Bass, 45,298 (La.App.2d Cir.8/11/10), 47 So.3d 541, writ denied, 2010-2405 (La.2/25/11), 58 So.3d 457.
In this case, the defendant was arrested pursuant to a valid arrest warrant which charged him with numerous drug and weapons offenses. Within minutes of the defendant’s arrest, Mico alerted on the driver’s door of the defendant’s vehicle, which was parked in a public place and readily mobile. According to the testimony of his handler, Mico was trained to alert on a variety of drugs, was nationally certified, and had proven reliable in the field.[7] After Mico alerted, the police had probable cause to search the vehicle for evidence and it was reasonable to believe the vehicle contained contraband and evidence of a crime. The arrest, Mico’s alert, and the ensuing search were recorded on Corporal Yarbrough’s dashcam; a recording of these events was admitted into evidence at the hearing and reviewed by the trial court and this court. This recording corroborated I^Corporal Yarbrough’s testimony concerning the arrest and the search of the defendant’s vehicle at the gas station.
Based on the foregoing, we find that the search of the defendant’s vehicle, which occurred immediately following his arrest and after a police dog trained to detect illegal drugs alerted on the driver’s door, was valid. The defendant’s assignments of error and arguments to the contrary are without merit.
INEFFECTIVE ASSISTANCE OF COUNSEL
In a pro se assignment, the defendant contended that his counsel was ineffective in a variety of ways. In particular, he claimed that his lawyer failed to properly challenge the arrest warrant and its supporting affidavit, as well as the search warrants and their supporting affidavits.
The test for effectiveness of counsel is two-pronged. First, a defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment to the U.S. Constitution. Second, he must show that the deficient performance prejudiced the defense by establishing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. *229 A-reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised | ^reasonable professional judgment. State v. Moore, 48,769 (La.App.2d Cir.2/26/14), 134 So.3d 1265.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (PCR) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Cook, 48,355 (La.App.2d Cir.11/20/13), 127 So.3d 992, writ denied, 2013-3000 (La.5/30/14), 140 So.3d 1174. However, when the record is sufficient, an appellate court may resolve this issue on direct appeal in the interest of judicial economy. State v. Cook, supra.
A review of the appellate record shows that the defendant’s retained counsel vigorously and zealously litigated the defendant’s motions to suppress, which challenged the arrest warrant and its supporting affidavit. The trial court strongly commended defense counsel’s performance, and we find that this praise was well deserved.
The defendant additionally contends that his counsel failed to properly challenge the search warrants and their supporting affidavits, as well as the denial of production of the Cl. Out of an abundance of caution, the defendant’s claims pertaining to the search warrants and the Cl’s identify were addressed supra and found to be merit-less. The defendant has failed to show how he was prejudiced by counsel’s decision not to pursue these meritless claims.
The defendant also makes a fleeting reference to his Crosby plea in his ineffective representation claims. However, as it was not actually |19briefed, any ineffective counsel complaint related to the plea is deemed abandoned. U.R.C.A. Rule 2-12.4; State v. Dewey, 408 So.2d 1255 (La.1982); State v. Serova, 46,176 (La.App.2d Cir.4/13/11), 60 So.3d 723. Furthermore, after the defendant’s retained counsel withdrew in October 2012, the defendant chose to represent himself with an attorney from the Indigent Defender Office as standby counsel. A defendant who chooses to represent himself may not complain on appeal that his self-representation was inadequate. State v. Bell, 2009-0199 (La.11/30/10), 53 So.3d 437, cert. denied, - U.S. -, 131 S.Ct. 3035, 180 L.Ed.2d 856 (2011); Faretta v. California, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975).
Based upon the record before us, we find no basis for finding that counsel was ineffective in his representation of the defendant.
This assignment of error lacks merit.
CONCLUSION
The defendant’s convictions and sentences are affirmed.
AFFIRMED.

. State v. Crosby, 338 So.2d 584 (La.1976).

. Apparendy, there was no recording.

. The charges were: (1) possession of marijuana, second offense; (2) possession of marijuana with intent to distribute; (3) possession of MDMA with intent to distribute; (4) possession of CDS with a firearm; (5) possession of firearm by a convicted felon. None of these charges arose from the controlled buy by the Cl on February 2, 2012, at the Marjorie Street house.

. The defendant had a 1999 federal conviction for cocaine distribution for which he was sentenced to 60 months.

. Although the copy of the defendant's rap sheet admitted at the hearing is apparently missing a page, the record indicates that this charge led to the defendant’s 2008 guilty plea to attempted possession of firearm by a convicted felon.

. After the hearings were held in this case, the United States Supreme Court rendered Florida v. Harris, — U.S. -, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013). Although the precise issue before the Court dealt with evi-dentiary matters involving dog alerts, it reiterated that dog alerts can establish probable cause:
In short, a probable-cause hearing focusing on a dog's alert shpuld proceed much like any other. The court should allow the parties to make their best case, consistent with the usuál rules of criminal procedure. And the court should then evaluate the proffered evidence to decide what all the circumstances demonstrate. If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast,' the defendant has challenged the State’s case (by disputing *228 the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence. In all events, the court should not prescribe, as the Florida Supreme Court did, an inflexible set of evidentiary requirements. The question — similar to every inquiry into probable cause — is whether all the facts surrounding a dog’s alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test.

. The defendant contends that the trial court erred in finding that Mico was reliable. The trial court obviously accepted the unrefuted testimony of Corporal Yarbrough. We find no manifest error in this factual finding.