McCALLUM, J.
Marcus U. Jackson ("Mr. Jackson") appeals the trial court's denial of his "Motion to Quash the Arrest Warrant and To Suppress." On April 3, 2018, Mr. Jackson entered a Crosby plea of guilty to possession of marijuana, fourth offense, while reserving his right to appeal the trial court's decision denying his motion. Mr. Jackson argues that the trial court erred because the arrest warrant was based on an affidavit that contained false or misleading statements. Therefore, Mr. Jackson contends that we should reverse the trial court and grant his motion to quash and suppress.
For the following reasons, we affirm the trial court's decision in denying Mr. Jackson's motion to quash the arrest warrant and to suppress. We further affirm the conviction and sentence of Mr. Jackson.
FACTS
On July 11, 2017, in the parish of Jackson, the Honorable Daniel W. Newell, through his assistant district attorney, Mr. J. Clay Carroll, filed a bill of information charging Mr. Jackson with two counts of criminal conduct. Count One was conspiracy to distribute schedule II CDS. Count two was possession of marijuana, fourth offense.
On November 7, 2017, at the conclusion of a preliminary hearing, the Honorable *1017 Jimmy C. Teat found probable cause to hold Mr. Jackson under his bail obligation pending trial. At the preliminary hearing, the court accepted evidence including the arrest warrant, the accompanying affidavit upon which the arrest warrant was issued, the testimony of the affiant, Deputy Shultz, and a video of the alleged meeting between the confidential reliable informant ("CRI") and Mr. Jackson. The Court also heard arguments by counsel for both Mr. Jackson and the State.
On February 1, 2018, Mr. Jackson filed a motion to quash the arrest warrant and to suppress any evidence obtained through the execution of the warrant. Mr. Jackson alleged that the arrest warrant in question contained "false and/or misleading statements." Therefore, Mr. Jackson sought to quash the arrest warrant, suppress certain evidence obtained through searches connected with the arrest and have all charges against him dropped. On April 3, 2018, the trial court held a hearing and denied Mr. Jackson's motion. Mr. Jackson then entered his Crosby plea of guilty to possession of marijuana, fourth offense.
The trial court considered the evidence within the record from the preliminary exam and heard additional arguments of counsel. Mr. Jackson argued that the affidavit, upon which the judge issued the arrest warrant, contained false or misleading statements. Specifically, Mr. Jackson argued that although Deputy Shultz stated within his affidavit that Mr. Jackson was seen and heard talking to the CRI, the video of the meeting neither visually nor audibly proved Mr. Jackson's presence. Mr. Jackson further argued that Deputy Shultz had previously stated that he reviewed the video prior to signing his affidavit and securing the arrest warrant. Therefore, Mr. Jackson asserted that Deputy Shultz intentionally misled the judge when securing the arrest warrant.
The affidavit in question states the following:
On or about March 15, 2017 I, Deputy Donovan Shultz was contacted by Deputy Mike Roland and Deputy Clay Sonnier with the Bienville Parish Narcotics unit. They advised met that they had a CRI who could come make a buy from Edward Zumwalt. They stated that they had already made a few cases on him and that Zumwalt did not have a way to get to Bienville Parish that day.
We meet a location in Jackson Parish where the CRI was searched along with vehicle being used. The CRI was given $ 225 for the buy. The CRI left the meet location to go to Zumwalt's residence located on Leon Drive in Jonesboro. Had approximately 12:51 the CRI sent a text stating that they were going to Poochie's house, Marcus U. Jackson. At approximately 13:09 hours the CRI arrived back to the meet location where he handed us a clear plastic bag with white material suspected to be methamphetamine.
The CRI was interviewed and searched again. The CRI stated that when CRI arrived at Zumwalt's residence that he stated that they had to go to Poochie's house. The film shows them going to that residence located on Robinson Street in Jackson Parish. CRI stated that Poochie arrived and walks up to the truck and ask where Zumwalt was and then goes to inside the trailer where he was at. Zumwalt then comes out and gives him the bag of suspected meth.
On or about April 7, 2017 to the Crime lab in Shreveport. We received a crime lab report back stating that the sample submitted weighed 5.14 grams and did test positive for Methamphetamine, Schedule II CDS.
Marcus U. Jackson did commit the offense of Conspiracy to Distribute a *1018 Schedule II CDS, that being Methamphetamine. This is done in violation of Louisiana Revised Statute 14:27 & 40:967.
The trial court noted that no evidence within the record reflected that Deputy Shultz reviewed the video prior to executing his affidavit or to securing the arrest warrant. The trial court further found that Deputy Bailey, who arrested Mr. Jackson and performed the search pursuant to the arrest warrant, acted in good faith. Therefore, the trial court found that the evidence obtained through the search did not bear the "poisonous fruits" complained of by Mr. Jackson.
The trial court sentenced Mr. Jackson to 42 months of imprisonment at hard labor. He now appeals the decision of the trial court, asserting the identical arguments outlined at the hearing on his motion to quash and suppress.
DISCUSSION
Titled "Warrant of arrest; issuance," applicable parts of Louisiana Code of Criminal Procedure Article 202 state:
A. A warrant of arrest may be issued by any magistrate pursuant to this Paragraph or as provided in Paragraph D of this Article and, except where a summons is issued under Article 209 of this Code, shall be issued when all of the following occur:
(1) The person making the complaint executes an affidavit specifying, to his best knowledge and belief, the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any....
(2) The magistrate has probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it.
Probable cause for an arrest exists when the facts and circumstances known to the police and of which the police have reasonably trustworthy information are sufficient to justify a person of average caution in the belief that the person to be arrested has committed a crime. State v. Williams , 448 So.2d 659 (La. 1984) ; State v. Smith , 49,356 (La. App. 2 Cir. 11/19/14), 152 So.3d 218, writ denied , 2014-2695 (La. 10/23/15), 179 So.3d 597 ; State v. Brown , 47,247 (La. App. 2 Cir. 9/26/12), 105 So.3d 734. When a warrant is challenged, the task for a reviewing court is to ensure that under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed. If the magistrate finds that the affidavit is sufficiently detailed and reliable to show probable cause, the reviewing court should interpret the affidavit in a realistic and common sense fashion, being aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. State v. Shiell , 16-447 (La. App. 5 Cir. 12/7/16), 204 So.3d 1213, writ denied , 17-0041 (La. 9/15/17), 225 So.3d 477. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. Id. ; State v. Gaubert , 14-396 (La. App. 5 Cir. 12/16/14), 167 So.3d 110, 114.
Minor inaccuracies in assertions in the affidavit may not affect the validity of the warrant. However, if intentional misrepresentations designed to deceive the issuing magistrate are made by the affiant seeking to obtain the warrant, the warrant must be quashed. Alternatively, if unintentional misstatements are included, these misstatements must be excised and the remainder used to determine if probable cause for the issuance of a warrant is set forth. Similarly, when the affiant omits material facts without intent to deceive, *1019 the reviewing court must add the omitted facts to those originally included and retest the sufficiency of the showing of probably cause. State v. Williams , supra ; State v. Smith , supra ; State v. Brown , supra . The term "intentional" means a deliberate act made for the purpose of deceiving the magistrate. State v. Rey , 351 So.2d 489 (La. 1977) ; State v. Smith , supra .
Titled "Motion to suppress evidence," relevant parts of Louisiana Code of Criminal Procedure Article 703 state:
A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
...
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
An affidavit supporting a search warrant is presumed to be valid, and the defendant has the burden of proving that the representations made in the affidavit are false. State v. Shiell , supra ; State v. Dee , 09-712 (La. App. 5 Cir. 2/23/10), 34 So.3d 892, writ denied , 10-705 (La. 10/29/10), 48 So.3d 1097.
A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Fountain , 49,637 (La. App. 2 Cir. 3/4/15), 162 So.3d 652 ; State v. Roberson , 46,697 (La. App. 2 Cir. 12/14/11), 81 So.3d 911, writ denied , 12-0086 (La. 4/20/12), 85 So.3d 1270. An appellate court reviews a trial court's ruling on a motion to suppress under the manifest error standard in regard to factual determinations, as well as credibility and weight determinations, while applying de novo review to findings of law. State v. Fountain , supra .
Mr. Jackson argues that the arrest warrant in question was secured based on an affidavit executed by Deputy Shultz. The affidavit states that the CRI told Deputy Shultz that Mr. Jackson approached the vehicle, then approached the house and secured the controlled dangerous substances from another party in the house. Mr. Jackson contends that because Deputy Shultz viewed the video prior to writing his affidavit, and where the video does not show Mr. Jackson or record any conversation with the CRI, then Deputy Shultz intentionally included false statements or misrepresentations within his affidavit.
The video in question neither shows Mr. Jackson's approach to the vehicle, nor records his voice. The video does show gestures by the CRI that Deputy Shultz testified were the basis of knowing that Mr. Jackson approached the vehicle. Deputy Shultz testified that the CRI informed him that Mr. Jackson approached the vehicle, went into the house, and secured the controlled dangerous substances. Deputy Shultz further testified that the video included gestures by the CRI that indicated that Mr. Jackson was present and that he was the party involved in the crime.
With regard to Deputy Shultz's alleged intentional false statements or misrepresentations, Mr. Jackson did not produce any evidence of his claim. The Court noted that neither the State nor Mr. Jackson provided evidence or testimony that Deputy Shultz reviewed the video in question prior to writing his affidavit. In fact, counsel for Mr. Jackson even stated to the trial judge that she did not know if Deputy Shultz viewed the video before or after he *1020 wrote the affidavit. At best, Mr. Jackson can prove only that Deputy Shultz viewed the video prior to the preliminary exam hearing, not prior to his creation of the affidavit. Noting such in his ruling, Judge Teat correctly found that Deputy Shultz did not intentionally mislead the magistrate.
Additionally, the affidavit does not contain any misrepresentations or false statements. In his affidavit, Deputy Shultz does not state that the video shows Mr. Jackson. Instead, Deputy Shultz states that the CRI informed him that Mr. Jackson approached the vehicle and that he spoke with Mr. Jackson. During the preliminary hearing, Deputy Shultz testified that the video, including the hand gestures by the CRI on the video, supported the statement told to him by the CRI. The only time that Deputy Shultz mentions the video in question is to indicate that it shows that the CRI drove to Mr. Jackson's home. Therefore, the trial court correctly concluded that the affidavit in question did not contain false statements or misrepresentations.
Finally, even if the affidavit contained information that was unintentionally omitted, the outcome would not have changed. That Mr. Jackson cannot be seen or heard on the video does not diminish the substantial, sufficient basis for the issuance of the arrest warrant. The CRI stated that Mr. Jackson was present at the vehicle and the house and that Mr. Jackson approached the house and secured the controlled dangerous substance. Furthermore, Deputy Shultz included his conversation with the CRI in his affidavit along with lab reports of the substances that Mr. Jackson procured.
We find no evidence that Deputy Shultz purposefully or intentionally misled the magistrate. We find that the affidavit does not contain any false statements or misrepresentations. We further find that even including the fact that the video does not show or record Mr. Jackson, the affidavit was still sufficient for the magistrate to issue the arrest warrant. Therefore, we find Mr. Jackson's assignment of error to be without merit.
CONCLUSION
The judgment of the trial court is AFFIRMED. Furthermore, the conviction and sentence of Mr. Jackson are AFFIRMED.