PEATROSS, J.
 

 11 Following a jury trial, Defendant, Terrance Lawrence, was convicted as charged of possession of over 400 grams of cocaine in violation of La. R.S. 40:967(F)(l)(e) and subsequently sentenced to 30 years’ imprisonment without the benefit of parole, probation or suspension of sentence. Defendant now appeals. For the reasons stated herein, Defendant’s conviction is affirmed and the case is remanded for resen-tencing.
 

 FACTS
 

 This matter arises from a traffic stop that occurred during Labor Day weekend on September 1, 2007, at approximately 10:15 p.m. Defendant was a passenger riding in a gray Honda Accord proceeding east along Interstate 20 in Bienville Parish. The driver of the vehicle, Brande Stowe, and Defendant were returning to Florida from Dallas, Texas.
 

 During this time, State Troopers Jason Parker and Tim Gray were on patrol when they observed Ms. Stowe’s vehicle. The officers could not clearly see the license plate so they began to follow the vehicle to determine whether there was a license plate attached to the car. While following the vehicle, the officers observed the vehi
 
 *333
 
 cle cross both the center line and the fog line. The officers then became concerned that the driver of the vehicle was impaired and decided to conduct a traffic stop.
 

 Once stopped by the officers, Ms. Stowe presented a valid Florida driver’s license and stated that she was returning to Florida after flying to Dallas, Texas to meet her boyfriend’s family. She further stated that she was tired and looking for a hotel to stop for the night. When questioned a few | ^.minutes later, Ms. Stowe contradicted this statement, stating that she had driven from Florida to Dallas, Texas instead of taking a plane.
 

 Officer Parker then approached Defendant, who was seated in the passenger’s seat, and observed him making a call on his cell phone. Defendant stated to the officer that he was contacting his “legal people.” Officer Parker noted that Defendant appeared very nervous and was behaving oddly.
 

 Although Officer Parker decided to release Ms. Stowe with a warning, both officers felt as if criminal activity was present, so Officer Parker requested consent to search Ms. Stowe’s vehicle. On Ms. Stowe’s refusal to consent to the search, Officer Parker called a K-9 unit and conducted a K-9 search of the vehicle. The K-9 subsequently alerted on the trunk area of the vehicle and a search of that area yielded approximately nine pounds of cocaine wrapped in plastic Wal-Mart bags. Fingerprint analysis later revealed that Defendant’s fingerprint was located on one of the bags.
 

 As previously stated, Defendant was then arrested, charged with possession of more than 400 grams of cocaine in violation of La. R.S. 40:967(F)(l)(c) and, after a trial, Defendant was convicted as charged by a jury. Noting that this was Defendant’s second conviction involving drugs, the trial judge sentenced Defendant to serve a term of 30 years’ imprisonment without the benefit of parole, probation or suspension of sentence. Defendant now appeals his conviction and sentence.
 

 |
 
 ¡¡DISCUSSION
 

 Assignment of Error Number One (verbatim):
 
 The jury verdict convicting Terrance Lawrence of Possession of Cocaine fails to meet the legal standard of sufficiency of the evidence.
 

 Defendant argues that, because he was only a passenger in Ms. Stowe’s vehicle and did not have any cocaine on his person, the single fingerprint found on one of the bricks of cocaine was insufficient evidence to support his conviction under La. R.S. 40:967(F)(l)(c). Defendant further argues that he might have handled the drugs inadvertently and left his fingerprint on them since he packed the trunk of the car prior to the couple’s departure from Texas.
 

 The State argues that the evidence was sufficient to support Defendant’s conviction considering the totality of the circumstances which include: (1) Defendant’s presence in the car where nine pounds of cocaine were found; (2) Defendant’s prior criminal history; (3) Defendant’s suspicious phone call to his “legal people” during a stop for a minor traffic violation; and (4) Defendant’s fingerprint on a plastic bag containing the cocaine.
 

 When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The sufficiency claim is reviewed first because the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in
 
 *334
 
 accordance with
 
 Jackson v. Virginia,,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light |4most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685,
 
 writ denied,
 
 09-0725 (La.12/11/09), 23 So.3d 913;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 

 The Jackson standard is applicable in cases involving both direct and circumstantial evidence.
 
 Jackson v. Virginia, supra.
 
 An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution.
 
 Id.
 
 When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational | strier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La. 1983);
 
 State v. Speed,
 
 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582,
 
 writ denied,
 
 09-0372 (La.11/6/09), 21 So.3d 299;
 
 State v. Parker,
 
 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497,
 
 writ denied,
 
 07-2053 (La.3/7/08), 977 So.2d 896.
 

 Cocaine is listed as a Schedule II substance under La. R.S. 40:964 A(4). Further, La. R.S. 40:967(C), provides in pertinent part:
 

 It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
 

 [[Image here]]
 

 This court has previously held that a fingerprint left on a bag containing cocaine is “obviously additional evidence to support a possession charge.”
 
 State v. Clark,
 
 33,794 (La.App.2d Cir.11/3/00), 774 So.2d 291,
 
 writ denied,
 
 00-3511 (La.8/31/01), 795 So.2d 1209.
 

 In the matter
 
 sub judice,
 
 Defendant was a passenger riding in a car that was found to contain nearly nine pounds of cocaine. Defendant admitted having driven the car approximately one week prior to the stop. Defendant further conceded that, not only did he have access to the trunk area of the car, but he loaded multiple items into the trunk. Defendant’s fingerprint was found on the material wrapping one of the bricks of cocaine. This fingerprint is particularly significant because the bricks were double Ifibagged,
 
 i.e.,
 
 first zipped into plastic bags and then placed in plastic “Wal-Mart” bags. Accordingly, we find that the evidence was sufficient to support Defendant’s conviction.
 

 
 *335
 
 This assignment of error is without merit.
 

 Assignment of Etror Number Two (verbatim):
 
 The trial court erred in denying the Motion to Suppress the Evidence.
 

 Defendant argues that the initial stop resulted in a prolonged and unconstitutional detention without the officers having any reasonable suspicion that criminal activity was afoot. In support of this argument, Defendant contends that the video footage of the incident does not show Ms. Stowe weaving in her lane of travel. Defendant also asserts that the officers im-permissibly extended the scope of the initial stop by running a criminal background check of Defendant. Finally, Defendant avers that the duration of the stop was too long since it lasted for approximately 28 minutes before the K-9 unit was called.
 

 The State argues that the initial stop was lawful since the officers observed Ms. Stowe weaving in her lane of travel and, therefore, had probable cause to believe a traffic violation had occurred. The State further contends that the officers’ suspicions were all that was necessary to call for a K-9 unit. The State concludes that, since the K-9 unit arrived within 2-3 minutes of being called, the duration of the detention was not impermissible.
 

 The right of every person to be secure in his person, house, papers and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and by Article I, § 5, |7of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is
 
 per se
 
 unreasonable unless the warrantless search and seizure can be justified under one of the narrowly drawn exceptions to the warrant requirement.
 
 State v. Thompson,
 
 02-0333 (La.4/9/03), 842 So.2d 330;
 
 State v. Tatum,
 
 466 So.2d 29 (La. 1985);
 
 State v. Ledford,
 
 40,318 (La.App.2d Cir.10/28/05), 914 So.2d 1168.
 

 The purpose of limiting warrant-less searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrant-less searches under special circumstances.
 
 Donovan v. Dewey,
 
 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981);
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 Camara v. Municipal Court,
 
 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). When the constitutionality of a warrantless search and seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. La. C. Cr. P. art. 703(D);
 
 State v. Johnson,
 
 32,384 (La.App.2d Cir.9/22/99), 748 So.2d 31.
 

 The authority and limits of the Fourth Amendment apply to investigative stops of vehicles.
 
 United States v. Sharpe,
 
 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985);
 
 United States v. Hensley,
 
 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The stopping of a [ ^vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment.
 
 United States v. Shabazz,
 
 993 F.2d 431 (5th Cir.1993).
 

 The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is the two-step formulation articulated in
 
 Terry v. Ohio, supra; State v. Pena,
 
 43,321 (La.App.2d Cir.7/30/08), 988 So.2d 841;
 
 State v. Sims,
 
 40,300 (La.App.2d Cir.10/26/05), 914 So.2d 594. The court must determine “whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances
 
 *336
 
 which justified the interference in the first place.”
 
 United States v. Shabazz, supra, quoting Terry v. Ohio, supra.
 

 For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur before stopping the vehicle.
 
 United States v. Sharpe, supra; State v. Pena, supra; State v. Sims, supra.
 
 When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer.
 
 State v. Huntley,
 
 97-0965 (La.3/13/98), 708 So.2d 1048.
 

 The determination of reasonable suspicion for an investigatory stop, or probable cause for arrest, does not rest on the officer’s subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of the challenged action.
 
 State v. Landry,
 
 98-0188 (La.1/20/99), 729 So.2d 1019;
 
 State v. Pena supra; State v. Arnold,
 
 34,194 (La.App.2d Cir.12/6/00), 779 So.2d 840. Therefore, when an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable.
 
 Whren v. United States,
 
 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
 

 La. C. Cr. P. art. 215.1(D) states that, in conducting a traffic stop, “an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity.” The statute also provides, however, that “nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with the administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.” La. C. Cr. P. art. 215.1(D), therefore, does not preclude an officer from conducting a routine driver’s license and vehicle registration check or from engaging in conversation with the driver and passenger while doing so.
 
 See
 
 La. R.S. 32:404(A); La. R.S. 47:511(A);
 
 State v. Lopez,
 
 00-0562 (La.10/30/00), 772 So.2d 90.
 

 Additionally, a K-9 search is not a “search” within the meaning of the Fourth Amendment.
 
 United States v. Place,
 
 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983);
 
 State v. Gant,
 
 93-2895 (La.5/20/94), 637 So.2d 396;
 
 State v. Paggett,
 
 28,843 (La.App.2d Cir.12/11/96), 684 So.2d 1072. Once a K-9 alerts on the vehicle, the officers have probable cause to search the vehicle without first obtaining a warrant.
 
 Maryland v. Dyson,
 
 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999);
 
 United States v. Ross,
 
 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
 

 The lawfulness of the stop in the case
 
 sub judice
 
 has been previously reviewed by this court and upheld.
 
 State v. Stowe,
 
 44,815 (La.App.2d Cir.10/28/09), 25 So.3d 945. In the present matter, both officers testified that they observed Ms. Stowe committing a traffic violation by crossing the fog line and the center line in her lane of travel. This observation by the officers furnished the necessary reasonable suspicion to believe that a traffic violation had been committed. The officers, therefore, had grounds for a lawful traffic stop during which they were permitted to check the licenses of both the driver and passenger.
 

 Additionally, Officer Parker’s decision to refrain from issuing Ms. Stowe a traffic violation citation is of no consequence to the legal validity of the stop. The inconsistencies in Ms. Stowe’s and Defendant’s
 
 *337
 
 explanations regarding their travels, Defendant’s obvious nervousness and suspicious behavior and Defendant’s cell phone call to his “legal people” all provided support for the officers’ reasonable suspicion that criminal activity was afoot. This reasonable suspicion justified extending the stop so that the officers could continue to investigate the matter more thoroughly. Additionally, in spite of Defendant’s argument that the 30-minute duration of the stop was impermissibly long, there exists no bright-line rule for determining the appropriate length of traffic stops.
 

 Finally, the K-9 sniff of the exterior of the car was lawful since it was not a search. Once the K-9 alerted to the trunk area of the vehicle, the [^officers’ subsequent search was lawful because the K-9 alert provided probable cause for the officers to believe that there were narcotics inside the trunk. Accordingly, the traffic stop was lawful and the cocaine found in the trunk of the vehicle was properly admitted at trial.
 

 This assignment of error is without merit.
 

 Assignment of Error Number Three (verbatim):
 
 The trial court erred in allowing the audio of the stop to be played to the jury-
 

 The audio portion of the video depicting the traffic stop contains a conversation between the officers wherein they discuss Defendant’s criminal history. Specifically, the officers are told to call the station responsible for running Defendant’s background check because his criminal history is too lengthy to recite over the radio. Once the officer phones into the station, he repeats Defendant’s criminal history aloud, which can be heard on the audio of the footage played for the jury. Defendant argues that the audio of the video footage of the traffic stop was prejudicial and that, when the video was played in front of the jury, Defendant was deprived of the presumption of innocence, his right to confront his accusers and his privilege against self-incrimination.
 

 The State counters that the video footage was properly admissible under the
 
 res gestae
 
 exception to the hearsay rule. The State further argues that the audio portion of the video footage is not considered testimony and, therefore, should not be considered impermissible other crimes evidence.
 

 In general, evidence pertaining to the defendant’s commission of crimes, wrongs or acts, other than the one with which he is currently charged, is inadmissible, when the only purpose of such evidence is to |12prove the defendant’s character and, thus, his subsequent disposition to break the law. La. C.E. art. 404;
 
 State v. Hamson,
 
 604 So.2d 583 (La.1992);
 
 State v. Humphrey,
 
 412 So.2d 507 (La.1981);
 
 State v. Langston,
 
 43,923 (La.App.2d Cir.2/25/09), 3 So.3d 707,
 
 writ denied,
 
 09-0696 (La.12/11/09), 23 So.3d 912;
 
 State v. Reed,
 
 43,780 (La.App.2d Cir.12/3/08), 1 So.3d 561,
 
 writs denied,
 
 09-0014, 09-0160 (La.10/2/09), 18 So.3d 100, 103.
 

 The underlying rationale is that the prejudicial tendency of such evidence outweighs its probative value because the finder of fact is likely to convict on the basis that the defendant is a “bad person” rather than the strength of evidence against him in the case being tried.
 
 State v. Brown,
 
 318 So.2d 24 (La.1975);
 
 State v. Gay,
 
 616 So.2d 1290 (La.App. 2d Cir.1993),
 
 writ denied,
 
 624 So.2d 1223 (La.1993). La. C.E. art. 404 provides exceptions to this rule and provides in pertinent part:
 

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,
 
 *338
 
 knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
 

 According to
 
 State v. Brooks,
 
 01-0785 (La.1/14/03), 838 So.2d 725, “a videotape of the crime as it occurs is neither written evidence nor testimony.” La. C.E. art. 801(D)(4) further excludes from the hearsay definition things said and done “through the instructive, impulsive and spontaneous words and acts of the participants ... which are necessary incidents of the criminal act.” Further,
 
 res gestae
 
 are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and | ^spontaneous words and acts of the parties.
 

 Other jurisprudential and statutory factors come into play in determining whether evidence of other acts may be admitted. First, to be admissible, an exception listed in Article 404(B),
 
 ie.,
 
 proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, must have some independent relevance or be an element of the crime charged; and, in addition, such factor must be a genuinely contested issue at trial.
 
 State v. Welch,
 
 615 So.2d 300 (La.1993);
 
 State v. Jackson,
 
 625 So.2d 146 (La.1993). Second, the state must make a showing of fact which would support a jury finding that the defendant committed the prior act by a preponderance of the evidence. La. C.E. art. 1104;
 
 Huddleston v. United States,
 
 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988);
 
 State v. Lee,
 
 05-2098 (La.1/16/08), 976 So.2d 109,
 
 cert denied,
 
 - U.S. -, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008);
 
 State v. Warren,
 
 43,671 (La.App.2d Cir.12/17/08), 2 So.3d 523,
 
 writ denied,
 
 09-0353 (La.11/20/09), 25 So.3d 795. Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice to the jury, confusion of the issues, misleading the jury, undue delay or waste of time. La. C.E. art. 403;
 
 State v. Hatcher,
 
 372 So.2d 1024 (La.1979).
 

 Finally, the court must follow the requirements set forth in
 
 State v. Prieur,
 
 277 So.2d 126 (La.1973). In order to comply with due process, the State is required to give pretrial notice of its intent to use evidence of other crimes.
 
 State v. Prieur, supra. Prieur
 
 also requires that the State show, prior to admission of the evidence, that the evidence is not repetitive or cumulative, serves the purpose for which it is offered and is not pretext for portrayal of the defendant as a person of bad character.
 
 Id. Prieur
 
 further requires that, at the defendant’s request, the jury be charged that the evidence was received for the limited purpose of proving an issue for which other crimes evidence may be admitted, such as intent, and that the defendant cannot be convicted of any charge other than the one named in the indictment or one that is responsive to that charge.
 
 Id.
 

 The erroneous admission of other crimes evidence is subject to harmless error analysis.
 
 State v. Maise,
 
 00-1158 (La.1/15/02), 805 So.2d 1141. The test for determining harmless error is whether the reviewing court may conclude that the error was harmless beyond a reasonable doubt,
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000), or “whether the guilty verdict actually rendered in [the] trial was surely unattributable to the error.”
 
 Sullivan v. Loui-
 
 
 *339
 

 simia,
 
 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The remedy for the erroneous admission of evidence, where there is a reasonable doubt that such evidence was not harmless, is reversal of the defendant’s conviction.
 
 State v. Foret,
 
 628 So.2d 1116 (La.1993). A trial court’s decision regarding admissibility of evidence should not be | ^overturned absent a clear abuse of discretion.
 
 State v. Mosby,
 
 595 So.2d 1135 (La.1992).
 

 As previously stated, in the matter
 
 sub judice,
 
 the video depicting the substance of the traffic stop qualifies as
 
 res gestae
 
 evidence. The extended colloquy between the officers contained on the audio of the video footage regarding Defendant’s criminal history does not, however, qualify as
 
 res gestae
 
 evidence. The substance of the officers’ discussion on this portion of the audio of the video footage was likely prejudicial considering they were discussing in detail Defendant’s lengthy criminal history. Consequently, the jury was erroneously permitted to hear evidence of Defendant’s prior bad acts during trial.
 

 We find, however, that this error was harmless. Defendant was stopped while riding in a car containing approximately nine pounds of cocaine. Defendant’s behavior during the stop, including his phone call to his “legal people,” was extremely suspicious. Additionally, Defendant’s fingerprint was found on the
 
 inside
 
 bag around a brick of cocaine that was double bagged. Considering the strength of this evidence against Defendant, one cannot say that the jury verdict was attributable to the error admitting the audio of the video footage into evidence.
 

 Assignment of Error Number Four (verbatim):
 
 The sentence is illegal in that the entire thirty years was ordered to be served without benefit of probation, parole, or suspension of sentence.
 

 In his final assignment of error, Defendant argues that the trial judge erroneously sentenced Defendant to serve the entirety of his 30-year sentence without the benefit of parole, probation or suspension of sentence, | Kiwhich is contrary to La. R.S. 40:967(F)(l)(c) and (G). The State concedes that the trial judge erred in this respect and agrees that only the first 15 years of Defendant’s sentence should be served without the benefit of parole, probation or suspension of sentence.
 

 An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882. La. R.S. 40:967(F)(l)(c) provides in pertinent part that “[a]ny person who knowingly or intentionally possesses four hundred grams or more of cocaine ... shall be sentenced to serve a term of imprisonment at hard labor of not less than fifteen years, nor more than thirty years.” La. R.S. 40:967(G) also provides that:
 

 [w]ith respect to any person to whom the provisions of Subsection F are applicable, the adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F.
 

 Defendant was sentenced to the maximum term of incarceration, 30 years, and the trial court judge ordered that the entire 30 years be served without the benefit of parole, probation or suspension of sentence. We find that this sentence is contrary to the express language of La. R.S. 40:967(G) and, therefore, is illegal. Accordingly, we remand the matter for re-sentencing.
 

 CONCLUSION
 

 For the foregoing reasons, Defendant’s conviction is affirmed and the matter is
 
 *340
 
 remanded for resentencing consistent with this opinion.
 

 CONVICTION AFFIRMED AND REMANDED FOR RESENTENCING.