Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,085-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                      Plaintiff-Appellee

versus

CHRISTOPHER L. JONES                    Defendant-Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. F-2021-55

Honorable Will Barham, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for
By: Annette Fuller Roach             Defendant-Appellant

PENNY WISE DOUCIERE                  Counsel for
District Attorney                    Plaintiff-Appellee

KENNETH DOUGLAS WHEELER
AMANDA MICHELE WILKINS
Assistant District Attorneys

* * * * *

Before COX, THOMPSON, and HUNTER, JJ.

**HUNTER, J.**

Defendant, Christopher L. Jones, was charged by amended bill of information with obstruction of justice, in violation of La. R..S. 14:130.1(A)(2)(e), three counts of possession with intent to distribute a Schedule II Controlled Dangerous Substance ("CDS"), in violation of La. R.S. 40:967(A)(1), and one count of possession of a Schedule II CDS in an amount less than two grams, in violation of La. R.S. R.S. 40:967(C)(1). Defendant entered a guilty plea, pursuant to *State v. Crosby*, 338 So. 2d 584 (La. 1976), to one count of possession with intent to distribute cocaine, aggregate weight of less than two grams, and one count of possession with intent to distribute cocaine, aggregate weight of more than 28 grams. He was sentenced to serve 10 years at hard labor for possession with intent to distribute (less than two grams) and 20 years at hard labor for possession with intent to distribute (more than 28 grams). The trial court ordered the sentences to be served consecutively. For the following reasons, we affirm.

## FACTS

On January 6, 2021, Officer John Sepulvado, a police officer with the Rayville Police Department observed a blue vehicle swerving in the roadway. A traffic stop was conducted, and as the vehicle pulled over, Officer Sepulvado observed a Styrofoam cup being thrown out of the vehicle. The officer retrieved the cup and saw a "leafy green" substance which appeared to be marijuana.[1] Defendant, Christopher L. Jones, was the sole occupant of the vehicle. Based on past interactions, Officer Sepulvado was aware of defendant's history of committing drug-related offenses. He

---

[1] Subsequent testing determined the substance in the cup was synthetic marijuana.

ran defendant's driver's license and discovered defendant had active warrants for his arrest. The officer placed defendant under arrest. A search of the vehicle revealed scales, "baggies," razor blades, and a "large rock" of crack cocaine. Defendant was charged with obstruction of justice, in violation of La. R.S. 14:130.1(A)(2)(e), and possession with intent to distribute a Schedule II CDS, in violation of La. R.S. 40:967(A)(1).

On April 29, 2021, Deputy Robert Colvin, a deputy with the Richland Parish Sheriff's Office ("RPSO"), observed the driver of a blue Chevrolet Monte Carlo driving erratically down a one-way street and "cutting people off." Deputy Colvin, who had a K-9 partner in his vehicle, conducted a traffic stop and noted defendant was the driver of the vehicle. As he approached defendant, Deputy Colvin detected the odor of alcohol emitting from defendant, and defendant admitted he had "just smoked some weed." Defendant refused to consent to a search of his vehicle. Due to defendant's admission that he had "just smoked" marijuana, Deputy Colvin deployed his K-9 partner to conduct a free air sniff test of the vehicle. When the dog provided a positive alert on the exterior of the vehicle, the deputy searched the vehicle and discovered crack cocaine, synthetic marijuana, "baggies," other drug paraphernalia, and 56 twenty-dollar bills in the vehicle. Defendant was charged with possession with intent to distribute a Schedule II CDS.

On June 28, 2021, Lt. Jacob Mooney of the RPSO was patrolling in Rayville and observed the driver of a blue Chevrolet Monte Carlo execute a turn without using a turn signal. Lt. Mooney stopped the vehicle and recognized defendant, with whom he was familiar, as the driver. According Lt. Mooney, defendant appeared nervous, was "sweating profusely," and

2

avoiding eye contact. Lt. Mooney also testified he could detect a strong odor of marijuana emitting from the vehicle. Defendant refused to consent to a search of this vehicle; therefore, the deputy called a K-9 unit to the scene. Deputy Colvin and his K-9, along with Joe Williams, Jr., a narcotics investigator, were located nearby and soon arrived on the scene. Once the dog made a positive alert on the vehicle, the officers searched the vehicle and found ecstasy tablets, suspected marijuana, suspected crack cocaine, baggies, and scales. Subsequent testing revealed the substance was, in fact, cocaine with an aggregate weight of 43.8 grams. Defendant was charged with possession with intent to distribute a Schedule II CDS,[2] and possession with intent to distribute a Schedule II CDS, with an aggregate weight of less than two grams.

Based on the three traffic stops and arrests, defendant was charged by amended bill of information with obstruction of justice, in violation of La. R..S. 14:130.1(A)(2)(e), three counts of possession with intent to distribute a Schedule II Controlled Dangerous Substance ("CDS"), in violation of La. R.S. 40:967(A)(1), and one count of possession of a Schedule II CDS in an amount less than two grams, in violation of La. R.S. 40:967(C)(1).

On August 8, 2022, defendant filed a pro se motion to suppress the evidence seized during all three traffic stops, arguing the traffic stops and searches of his vehicle violated his Fourth Amendment rights. Following a hearing, the trial court denied the motions, stating, "[A]ll three motions to

---

[2] In open court, the Assistant District Attorney orally amended the bill of information to charge defendant with possession with intent to distribute a Schedule II CDS, aggregate weight more than 28 grams.

3

suppress are \*\*\* denied, probable cause is found not only for the initial stop of the defendant but for \*\*\* all three searches[.]"[3]

Defendant entered a *Crosby* plea[4] to one count of possession with intent to distribute cocaine (over 28 grams) and one count of possession with intent to distribute crack cocaine (less than 28 grams). In exchange, the State agreed not to file a habitual offender bill of information and to dismiss the other charges contained in the bill of information and all other separately-billed pending charges. The State also agreed not to seek sentence enhancement pursuant to La. R.S. 40:982.[5]

A sentencing hearing was conducted on October 24, 2023, during which defendant made an oral motion to withdraw his *Crosby* plea, asserting he was "forced to plead guilty" because of the "situation that [he] was in at

---

[3] The trial court found no probable cause existed to charge defendant with obstruction of justice.

[4] A *Crosby* plea allows a criminal defendant to condition his plea upon the reservation for appellate review of specified pre-plea errors. *State v. Crosby, supra*; *State v. Fontenot,* 410 So. 2d 1112 (La. 1982).

[5] La. R.S. 40:982 provides:

> A. Any person convicted of any offense under this Part, if the offense is a second or subsequent offense, shall be sentenced to a term of imprisonment that is twice that otherwise authorized or to payment of a fine that is twice that otherwise authorized, or both. If the conviction is for an offense punishable under R.S. 40:966(B), 967(B), 968(B), or 969(B), and if it is the offender's second or subsequent offense, the court may impose, in addition to any term of imprisonment and fine, twice the special parole term otherwise authorized.
>
> B. For purposes of this Section, an offense shall be considered a second or subsequent offense if, prior to the commission of such offense, the offender had at any time been convicted of any violation of this state, the United States, any other state of or any foreign country, relating to the unlawful use, possession, production, manufacturing, distribution, or dispensation of any narcotic drug, marijuana, depressant, stimulant, or hallucinogenic drugs.

4

the time." The trial court denied the motion. Defendant was sentenced to serve 20 years at hard labor for possession with intent to distribute cocaine (over 28 grams) and 10 years at hard labor for possession with intent to distribute cocaine (less than two grams), to be served consecutively. Defendant did not file a motion to reconsider sentence.

Defendant appeals.

## DISCUSSION

Defendant contends the trial court erred in denying his motions to suppress the evidence seized during the traffic stops. He argues each of the officers violated his Fourth Amendment rights by conducting "pretextual" stops and conducting searches. He also maintains each of the officers acknowledged they knew him due to prior interactions with him, and they were aware of his criminal record.

A defendant may move to suppress any evidence from use at trial on the basis that it was unconstitutionally obtained. La. C. Cr. P. art. 703(A). When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving that the search and seizure were justified pursuant to one of the exceptions to the warrant requirement. La. C. Cr. P. art. 703(D); *State v. Smith*, 49,356 (La. App. 2 Cir. 11/19/14), 152 So. 3d 218, *writ denied*, 14-2695 (La. 10/23/15), 179 So. 3d 597; *State v. Williams*, 46,674 (La. App. 2 Cir. 12/14/11), 81 So. 3d 220.

The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. A search and seizure conducted without a warrant issued on probable cause is *per se* unreasonable unless the State can

affirmatively show that the warrantless search and seizure was justified by one of the narrowly drawn exceptions to the warrant requirement. *See* La. C. Cr. P. art. 703(D); *State v. Carter*, 20-01193 (La. 1/26/21), 309 So. 3d 333; *State v. Lawrence*, 45,061 (La. App. 2 Cir. 3/3/10), 32 So. 3d 329, *writ denied*, 10-0615 (La. 10/8/10), 46 So. 3d 1265. The trial court's ruling on a motion to suppress must be afforded great weight and will not be set aside unless there is an abuse of discretion. *State v. Carter*, *supra*; *State v. Thompson*, 11-0915 (La. 5/8/12), 93 So. 3d 553; *State v. Wells*, 08-2262 (La. 7/6/10), 45 So. 3d 577. When a trial court makes findings of fact based on the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. *State v. Carter*, *supra*; *State v. Thompson*, *supra*. Legal findings or conclusions of the trial court are reviewed *de novo*. *Id*.

Pursuant to the investigatory stop recognized by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), a police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. An officer's reasonable suspicion of crime allows a limited investigation of a person. La. C. Cr. P. art. 215.1(A). However, reasonable suspicion is insufficient to justify custodial interrogation, even though the interrogation is investigative. *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *State v. Carter*, *supra*; *State v. Fisher,* 97-1133 (La. 9/9/98), 720 So. 2d 1179.

As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has

6

occurred. *Whren v. United States,* 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. *Id.* Although they may serve as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. *State v. Carter*, *supra*; *State v. Waters*, 00-0356 (La. 3/12/01), 780 So. 2d 1053.

The Fourth Amendment allows police to search a vehicle absent a warrant if a car is readily mobile and probable cause exists to believe it contains contraband. *State v. Lopez*, 00-0562 (La. 10/30/00), 772 So. 2d 90; *State v. Smith*, *supra*; *State v. Lee*, 46,742 (La. App. 2 Cir. 12/14/11), 79 So. 3d 1278. A warrantless search of a vehicle is not unreasonable if there is probable cause to justify the search, without proving any additional exigency, when the vehicle is readily mobile because there is an inherent risk of losing evidence. *State v. Freeman*, 44,980 (La. App. 2 Cir. 1/27/10), 33 So. 3d 222, *writ denied*, 10-0535 (La. 10/1/10), 45 So. 3d 1094; *State v. Bass*, 45,298 (La. App. 2 Cir. 8/11/10), 47 So. 3d 541, *writ denied*, 10-2405 (La. 2/25/11), 58 So. 3d 457.

Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); *State v. Smith*, *supra*.

In the instant case, defendant was stopped on January 6, 2021, after Officer Sepulvado observed him "driving all over the roadway, both sides, crossing the center line, swerving frantically," which constitutes a traffic

violation pursuant to La. R.S. 32:79.[6] The officer initiated a traffic stop, and as defendant was being pulled over, the officer observed defendant toss a Styrofoam cup out of the window. Officer Sepulvado retrieved the cup and observed it contained a "green leafy substance" which appeared to be marijuana. A run of defendant's driver's license revealed defendant had active warrants for his arrest, and the officer placed defendant under arrest and conducted a search of the vehicle.

As stated above, a police officer may search a vehicle incident to an arrest if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest. Officer Sepulvado witnessed defendant toss a cup out of the window and soon discovered the cup contained a green leafy substance, which he suspected was marijuana. Thus, the officer's belief the vehicle contained evidence of criminal activity was reasonable under the circumstances. Additionally, the vehicle was readily mobile.

Defendant also argues the April 29, 2021 traffic stop was pretextual. He asserts Deputy Colvin was familiar with him from "prior dealings," and did not articulate a reason for having the K-9 officer conduct a free air sniff.

In conducting a traffic stop "an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity." La. C. Cr. P. art. 215.1(D). During the stop, the officer has the right to conduct a routine

---

[6] A vehicle shall be driven as nearly as practicable entirely within a single lane. La. R.S. 32:79(1).

8

license and registration check and, while doing so, may engage in conversation with the driver and any passenger. *See State v. Lopez*, 00-0562 (La. 10/30/00), 772 So. 2d 90. If the officer develops reasonable suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. *U.S. v. Sharpe*, 470 U.S. 675, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985).

In determining whether the officer has a reasonable suspicion of some separate illegal activity that justifies further detention, the totality of the circumstances must be taken into account. *State v. Carter*, *supra*;[7] *State v.*

---

[7] In *State v. Carter*, *supra*, a police officer observed a motorist driving below the speed limit on the interstate. The officer pulled behind the vehicle and observed the vehicle's license plate was partially obstructed. The officer then watched as the driver crossed the solid yellow line on the left shoulder of the roadway and decided to stop the driver for a traffic violation. The officer obtained the driver's license and explained he had stopped him for crossing the yellow line. According to the officer, the driver was "nervous," and his hands were shaking. The officer's suspicions were heightened after the driver and his passenger provided differing stories regarding where they were going and their relationship with each other. During the course of the stop, the officer asked the passenger if he had ever been arrested, and the passenger admitted he had a prior arrest "for weed." Approximately 15 minutes into the stop, a K-9 unit arrived on the scene, and the dog conducted a "drug sniff" and alerted on the trunk. A search of the vehicle revealed the presence of cocaine. The trial court denied the motion to suppress, and the court of appeal reversed. The Louisiana Supreme Court vacated the court of appeal's ruling and reinstated the trial court's judgment, stating:

> [T]he trial court found the traffic stop was extended beyond the time he considered reasonable to write a ticket for the traffic violation, absent some finding of reasonable suspicion. The trial court conceded it was a close call, but ultimately concluded the state trooper had reasonable suspicion to extend the stop. The trial court apparently found Zimmerman to be a credible witness, referencing his testimony that [the driver] and [the passenger] were nervous and their statements as to the purpose and length of the trip were inconsistent. The trial court's finding of reasonable suspicion based on [the officer's] testimony is entitled to great deference. *** Last, the dashcam video showed less than 17 minutes had elapsed between the initial stop of the vehicle and the canine's alert to the trunk. Louisiana courts have upheld detentions of similar duration when the detaining officers diligently pursued their investigation. *See e.g., State v. Miller*, 2000-1657, p. 5 (La. 10/26/01), 798 So.2d 947, 951 (Court upheld 53-minute detention where officers acted diligently in summoning K-9 unit to search vehicle suspected of transporting marijuana); *State v. Coleman*, 2019-1458, pp. 5-6 (La. App. 1 Cir. 6/12/20), 305 So. 3d 878, 882, *writ denied*, 2020-0868 (La. 10/20/20), 303 So. 3d 294 (court upheld a 20-minute traffic stop where defendant appeared nervous and had no

*Kalie*, 96-2650 (La. 9/19/97), 699 So. 2d 879. A dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures. *Illinois v. Caballes*, 543 U.S. 405, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005).[8]

---

proof of insurance, the trooper observed marijuana residue on the window, and information obtained from a license plate reader indicated defendant was untruthful); *State v. Burney*, 47,056, pp. 11-12 (La. App. 2 Cir. 5/23/12), 92 So.3d 1184, 1192-93 (extension of lawful traffic stop for approximately 43 minutes from the time defendant refused consent to search the vehicle to the K-9 unit's arrival was justifiable); *State v. Romsky*, 2001-1067, p. 10 (La. App. 5 Cir. 4/10/02), 817 So.2d 186, 192 (60-minute detention justifiable where officer called K-9 unit within 5 minutes of stopping vehicle suspected of transporting narcotics).

Given the totality of the circumstances, we cannot say the trial court abused its discretion in denying Carter's motion to suppress the evidence. The testimony and evidence support the trial court's finding that [the officer ] had reasonable suspicion of possible criminal activity to extend the stop to allow a canine to conduct a sniff of the vehicle for contraband. Thus, we find the court of appeal erred in reversing the trial court and suppressing the evidence.

*Id.* at 338-9.

[8] In *Illinois v. Caballes*, *supra*, a police officer stopped the defendant for speeding. When the officer radioed police dispatch to report the stop, another officer overheard the transmission and immediately headed to the scene with his narcotics-detection dog. While the first officer was in the process of issuing a warning, the second officer walked his dog around the vehicle, and the dog alerted gave a positive alert on the vehicle's trunk. Based on the dog's alert, the officers searched the vehicle and found marijuana. The Illinois Supreme Court reversed the denial of the defendant's motion to suppress, finding the canine sniff was performed without any specific and articulable facts to suggest drug activity. The United States Supreme Court granted certiorari and vacated the ruling of the Illinois court, stating:

[T]he use of a well-trained narcotics-detection dog—one that does not expose noncontraband items that otherwise would remain hidden from public view—during a lawful traffic stop, generally does not implicate legitimate privacy interests. In this case, the dog sniff was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation. Any intrusion on respondent's privacy expectations does not rise to the level of a constitutionally cognizable infringement.
***
The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband in the trunk of his car. A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.
***
543 U.S. at 409-10, 125 S. Ct. at 838.

A canine sniff test by a well-trained narcotics detection dog does not constitute a search within the meaning of the Fourth Amendment. *United States v. Place*, 462 U.S. 696, 103 S. Ct. 2637, 77 L.Ed.2d 110 (1983); *State v. Smith*, 49,356 (La. App. 2 Cir. 11/19/14), 152 So. 3d 218, *writ denied*, 14-2695 (La. 10/23/15), 179 So. 3d 597; *State v. Freeman*, 44,980 (La. App. 2 Cir. 1/27/10), 33 So. 3d 222, *writ denied*, 10-0535 (La. 10/1/10), 45 So. 3d 1094. Once the dog alerts on the door panels, the officers have probable cause to search a vehicle without first obtaining a warrant. *State v. Smith*, *supra*; *State v. Freeman*, *supra*.

At the hearing on the motions to suppress, Deputy Colvin testified on April 29, 2021, he observed defendant "cutting people off, driving erratically down the one-way." He stated when he initiated the traffic stop based on the traffic violation, defendant "cut from the right lane across in front of me into the parking lot of Auto Zone." The deputy exited his vehicle, approached defendant's vehicle, and asked defendant if he was under the influence of anything. Due to defendant's admission he had "just smoked some weed," Deputy Colvin decided to deploy the dog to conduct a free air sniff of defendant's vehicle.

The evidence presented at the suppression hearing reflected Deputy Colvin observed defendant committing a traffic violation; therefore, the decision to conduct the stop was reasonable. During the deputy's encounter with defendant, defendant admitted he had "just smoked some weed," which caused the deputy to suspect defendant was engaging in criminal activity. Further, the narcotics detection dog alerted on the vehicle. Given the circumstances (defendant's admission and the dog's alert), Deputy Colvin had probable cause to believe the vehicle contained evidence of criminal

11

activity, and therefore, the officers were justified in searching defendant's vehicle pursuant to the automobile exception to the warrant requirement.

Regarding the June 28, 2021 traffic stop, Lt. Mooney testified he observed defendant execute a turn without using a turn signal, which was a violation of La. R.S 32:105.[9]  Because the deputy observed defendant committing a traffic violation, the subsequent stop was legal.  Lt. Mooney stated when he approached the vehicle, defendant "appeared very nervous, he was sweating profusely, [and he] couldn't make eye contact," and he "could smell a strong odor commonly associated with marijuana coming from inside the vehicle[.]"  Deputy Colvin, who was near the area of the traffic stop, arrived at the scene with his K-9 partner.  The dog provided a positive alert, and the officers searched the vehicle.

Based on these facts, probable cause for the initial stop existed. Further, the deputy testified defendant appeared nervous, and he could detect the odor of marijuana when he approached the vehicle.  Therefore, the use of the narcotics dog was justified to confirm or dispel the deputy's reasonable suspicion of the presence of contraband in the vehicle.  *See*, *U.S. v. Sharpe*, *supra*; *State v. Lee*, 46,742 (La. App. 2 Cir. 12/14/11), 79 So. 3d 1278.

---

[9] La. R.S. 32:105 provides:

A. Any stop or turn signal when required herein shall be given either by means of the hand and arm as provided in R.S. 32:106 or by signal lamps, except as otherwise provided in Paragraph B.

B. Any motor vehicle in use on a highway shall be equipped with, and the required signal shall be given by, signal lamps when the vehicle is so constructed, loaded or operated as to prevent the hand and arm signal from being visible, both to the front and to the rear.

Based on the facts presented during the suppression hearing, we find the trial court did not err in denying defendant's motions to suppress. It is not disputed defendant was stop by three different law enforcement officers, from two different agencies, on three different dates and was in possession of narcotics and drug paraphernalia during each of the three stops. Notwithstanding the officers' familiarity with defendant due to prior interactions with him, the circumstances of each of the stops support the officers' reasonable suspicion defendant may be engaged in criminal activity. Consequently, we find no merit in defendant's argument that the traffic stops were unlawful in violation of the Fourth Amendment.

Defendant also contends the sentences imposed violate the Eighth Amendment to the United States Constitution.[10] He argues the consecutive

---

[10] For the first time on appeal, defendant argues the third amended bill of information did not include the weight of each charge of possession with intent to distribute. More specifically, defendant maintains the enhanced provision of 40:967(B)(1)(b) for more than 28 grams does not apply, because the bill of information did not specifically state a charge for possession with intent to distribute a Schedule II CDS with an aggregate weight of more than 28 grams. Therefore, the 20-year sentence exceeds the amount of time for the offenses listed in the third amended bill of information. He also argues the prosecutor stated the charge was possession with intent to distribute more than 28 grams, and expressed the State's intent to amend the bill but did not do so in writing. Defendant concedes the trial court reviewed the provisions of La. R.S. 40:967(B)(1)(b) and stated in open court defendant was pleading to one count of possession with intent to distribute more than 28 grams. Defendant also acknowledges the felony plea bargain agreement, which he signed, listed count four as "PWID Sch II > 28 grams."

La. C. Cr. P. art. 881.1(E) provides:
> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the State or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

La. C. Cr. P. art. 881.1(E) precludes defendant from presenting sentencing arguments to the court of appeal which were not previously presented to the trial court. *State v. Horton*, 55,468 (La. App. 2 Cir. 2/28/24), 380 So. 3d 841, *writ denied*, 24-00365 (La. 10/1/24), 393 So.3d 864; *State v. Durham*, 53,922 (La. App. 2 Cir. 6/30/21), 321 So. 3d 525. As noted above, although the bill of information listed Count Four as possession with intent to distribute a Schedule II CDS, the record reveals defendant was informed by the State and the trial court he was being charged with possession of with intent to distribute a Schedule II CDS in an aggregate amount of more than 28 grams. Defendant did not object to the oral amendment to the bill of information, nor did he file a motion to

13

sentences, which amount to 30 years in prison, cruel and excessive punishment.

Generally, an excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. *State v. Dowles*, 54,483 (La. App. 2 Cir. 5/25/22), 339 So. 3d 749; *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 20-00745 (La. 11/19/19), 282 So. 3d 1065. However, when a defendant fails to timely file a motion to reconsider sentence, the appellate court's review of the sentence is limited to a bare minimum claim of constitutional excessiveness. *State v. Benson*, 53,578 (La. App. 2 Cir. 11/10/2020), 305 So. 3d 135. Defendant, by failing to file a motion to reconsider sentence, has waived his right to have his sentence reviewed for compliance with La. C. Cr. P. art. 894.1. As a result, the sole remaining question in this appeal is whether his sentences exceed the punishment allowed by the state and federal constitutions.

The Eighth Amendment of the United States Constitution and Article I § 20 of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. *State v. Sepulvado*, 367 So. 2d 762 (La. 1979). The appellate court must determine if the sentence is constitutionally excessive. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1. To assess a claim that a sentence violates La. Const. art. I § 20, the appellate court must determine if

---

reconsider sentence based on the State's failure to file an amended bill of information to specifically provide for the aggregate weight.

the sentence is grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey,* 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

The sentencing court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Gaines*, 54,383 (La. App. 2 Cir. 2/22/23), 358 So. 3d 194, *writ denied*, 23-00363 (La. 6/21/23), 362 So. 3d 428; *State v. Tubbs*, 52, 417 (La. App. 2 Cir. 11/20/19), 285 So. 3d 536, *writ denied,* 20-00307 (La. 7/31/20), 300 So. 3d 404, *on recons*., 20-00307 (La. 9/8/20), 301 So. 3d 30, and *writ denied*, 20-00307 (La. 9/8/20), 301 So. 3d 30.

Regarding concurrent and consecutive sentences, La. C. Cr. P. art. 883 provides:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all be served concurrently.

The decision to make sentences consecutive, rather than concurrent, is within the trial court's discretion. *State v. Farria*, 412 So. 2d 577 (La. 1982); *State v. Moss*, 55,454 (La. App. 2 Cir. 1/10/24), 379 So. 3d 285. When the court makes sentences consecutive, it must state the considerations, which may include the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for the defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain. *State v. Gant*, 54,837 (La. App. 2 Cir. 1/11/23), 354 So. 3d 824; *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031.

La. R.S. 40:967 provides, in relevant part:

**A. Manufacture; distribution.** [I]t shall be unlawful for any person knowingly or intentionally:

(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II.

***

**B. Violations of Subsection A.** Any person who violates Subsection A of this Section with respect to:

(1) *** a substance classified in Schedule II for an amount of:

(a) An aggregate weight of less than twenty-eight grams, shall be imprisoned, with or without hard labor, for not less than one year nor more than ten years and may, in addition, be fined not more than fifty thousand dollars.

(b) An aggregate weight of twenty-eight grams or more, shall be imprisoned at hard labor for not less than one year nor more than twenty years and may, in addition, be fined not more than fifty thousand dollars.

Prior to imposing the maximum 10- and 20-year sentences, the trial court considered defendant's extensive criminal history, noting he had

numerous drug-related arrests and convictions in Richland and Ouachita Parishes and in the State of Texas which dated back to the early 1990s. The court also considered defendant's social, educational, employment, and family history, and noted defendant had obtained a commercial driver's license and had been employed as a truck driver for over 10 years. The court also noted defendant was the 51-year-old father of three adult sons, who expressed they had a good relationship with defendant. Further, the court noted defendant's history of marijuana and cocaine use and stated defendant had never attempted to seek drug rehabilitation. The court considered the factors set forth in La. C. Cr. P. art. 894.1, noted defendant obtained substantial income from selling drugs, and his offenses created a risk of harm to more than one person. Further, the court ordered the sentences to be served consecutively because the offenses arose out of different acts or transactions.

Our review of this record reveals the trial court adequately considered the aggravating and mitigating factors and the sentences are well supported by the record. Defendant, a sixth-felony offender, substantially benefits from the plea bargain due to the State's agreement not to file a habitual offender bill of information, and the dismissal of other pending charges. Defendant's consecutive sentences are not constitutionally excessive because they are not grossly disproportionate to the severity of the offenses, are not shocking to the sense of justice or a needless infliction of pain and suffering.

## CONCLUSION

For the reasons set forth herein, we affirm defendant's convictions and sentences.

**AFFIRMED.**